## STATE OF CONNECTICUT *v.* RICHARD ANDERSON

## STATE OF CONNECTICUT *v.* JANICE ANDERSON
## (SC 18350)

Rogers, C. J., and Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.

1

Argued October 19, 2009—officially released March 2, 2010

*Allison Near*, with whom, on the brief, were *William F. Dow III* and *Trisha M. Morris*, for the appellants (defendants).

*Bruce R. Lockwood*, senior assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, chief state's attorney, *John R. Whalen*, supervisory assistant state's attorney, and *John H. Malone*, senior assistant state's attorney, for the appellee (state).

ZARELLA, J. The issue in this interlocutory[1] appeal[2] is whether the trial court abused its discretion in declaring a mistrial, over the defendants' objection, on the ground of manifest necessity after the senior assistant state's attorney had become seriously ill and was unable to continue with the trial. We conclude that the trial court did not abuse its discretion.

The record reveals the following relevant facts and procedural history. In connection with the alleged embezzlement of tens of thousands of dollars, the defendants, Richard Anderson and Janice Anderson, each were charged with, in separate informations, two counts of larceny in the first degree in violation of General Statutes § 53a-122 (a) (2),[3] and one count of conspiracy to commit larceny in the first degree in violation of § 53a-122 (a) (2) and General Statutes § 53a-48 (a). The two informations were consolidated for trial. On May 2, 2007, jury selection commenced and continued for approximately fifteen days. Six jurors and four alternate jurors ultimately were selected. During voir dire of the potential jurors, the court, *Schimelman, J.*,[4] informed the jurors that the trial was expected to start on June 12, 2007, and to last approximately five and one-half weeks.

---

[1] A ruling on a motion to dismiss criminal charges on grounds of double jeopardy is subject to interlocutory review. See, e.g., *State* v. *Tate*, 256 Conn. 262, 276, 773 A.2d 308 (2001).

[2] The defendants appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] Although § 53a-122 (a) was the subject of technical amendments in 2000; see Public Acts 2000, No. 00-103, § 1; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[4] Hereinafter, all references to the trial court are to the court, *Schimelman, J.*, unless otherwise noted.

On June 12, 2007, the jury was sworn, and the state began its case-in-chief. The trial continued until Friday, June 22, 2007. During that time, eight witnesses testified and nearly 400 exhibits were introduced. On June 24, 2007, the trial court was informed that the senior assistant state's attorney prosecuting the case, John H. Malone, had become seriously ill and had to be hospitalized. The court delayed the trial until July 5, 2007, in the hope that Malone would be able to return.

On July 5, 2007, the court held a hearing for the purpose of discussing potential dates to resume the trial. At the hearing, the state was represented by John R. Whalen, a supervisory assistant state's attorney, due to the continued illness of Malone. Initially, the court believed, on the basis of the information it had received to that date about Malone's health, that the earliest date on which the trial could resume was August 6, 2007. The court intended to discuss this potential date with the jurors, even though some of the jurors already had expressed scheduling concerns before Malone was hospitalized. Just minutes before coming out to the courtroom, however, the court, with the agreement of defense counsel, spoke with Malone on the telephone and learned that his condition was going to necessitate further hospitalization and a period of convalescence that was longer than the parties and the court originally had anticipated. On the basis of this new information, the court concluded that the resumption of the trial on August 6, 2007, would not be possible. The court further concluded that it would not be feasible to talk to the jurors about the possibility of resuming the trial in September, 2007, because of the seriousness of Malone's illness and the uncertainty regarding when he might be able to return to complete the trial.

The trial court also noted that, during its discussion with counsel in chambers, Whalen had represented that it was the state's view that another prosecutor would

not be able to replace Malone because of the complexity of this case. The court agreed, on the basis of its own observations, that the case was "very complex," and noted that the state already had offered more than 300 exhibits into evidence but had not yet reached "the heart of the case . . . ." The court further observed that the forensic accountants had yet to testify and that their testimony was expected to be lengthy. The court informed the parties that it did not believe that it was feasible to continue with the trial and, therefore, that it intended to declare a mistrial on the ground of manifest necessity.

Prior to declaring a mistrial, the court afforded counsel the opportunity to be heard on the record. Whalen stated that he did not think another prosecutor "could step in at this point and try to salvage this case until [Malone] returns, or finish it if he doesn't return." Whalen further stated that "we have all been caught by surprise. This is certainly one of those incidents where there is manifest necessity, and . . . the court is well within the law in declaring a mistrial." Defense counsel objected to a mistrial and stated that "the defendants have a valid constitutional right to have the case decided by a jury of their choice," and that it was his "feeling that this jury was attentive to this case and that [the defense] had made significant points in establishing reasonable doubt . . . if not complete innocence with respect to [the defendants]." Defense counsel further argued that "the state . . . should have been prepared," and, in view of the projected length and complexity of the trial, "it would have been wise [for] the state [to have obtained] a second lawyer in a case like this [one]."

After hearing the parties' arguments, the court summoned the jurors and declared a mistrial on the ground of manifest necessity. Specifically, the trial court found manifest necessity on the basis of "the totality of the

circumstances," including (1) "the medical condition of . . . Malone," (2) "the lack of the ability to ask another [prosecutor] to step in because the preparation time . . . would be significant," and (3) "the fact that [there are] jurors who [were] already chomping at the bit, so to speak, because of the time constraints that [the court] had originally estimated and because of the fact that these jurors [had] things that they had planned to do."

The defendants thereafter filed a joint motion to dismiss the charges against them, claiming that the trial court's declaration of a mistrial, over their objection, had not been based on manifest necessity and, therefore, that further prosecution would violate the guarantee against double jeopardy. The trial court, *Handy, J.,* denied the defendants' motion to dismiss and concluded that "the mistrial was properly declared by the court . . . over the defendants' objection, based on manifest necessity, after [the court] considered all possible alternatives and after [it] weighed the totality of the circumstances." This appeal followed.

On appeal, the defendants claim that the trial court's finding of manifest necessity was improper because the court failed to explore the alternative of a "reasonable, even if somewhat lengthy, continuance in order to allow another [prosecutor] to assume responsibility for the case." Specifically, the defendants claim that the trial court's reliance on Whalen's representations that, due to the complexity of the case, another prosecutor would not be able to replace Malone, was, "without more . . . insufficient to outweigh [the] defendants' valued right to have the original jury decide the case." In addition, the defendants claim that the trial court improperly failed to poll the jurors on their "availability in September [of 2007], *or beyond.*" (Emphasis in original.)

The state responds that the trial court was entitled to credit Whalen's representations regarding the

unavailability of a substitute prosecutor and that the defendants never disputed or challenged such representations or the court's finding that the case was "very complex . . . ." Accordingly, the state argues that the trial court was not required to poll the jurors as to their availability before declaring a mistrial because such an act would have been futile, as there was no future date certain when the trial could resume. The state therefore argues that, on the basis of the totality of the circumstances, the trial court properly exercised its discretion in declaring a mistrial on the ground of manifest necessity. We agree with the state and, therefore, conclude that the court, *Handy*, *J.*, properly denied the defendants' motion to dismiss.

We begin with a review of the doctrine of double jeopardy under the federal and state constitutions. The fifth amendment to the United States constitution provides in relevant part: "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ." This clause is applicable to the states through the due process clause of the fourteenth amendment; *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969); and establishes the federal constitutional standard concerning the guarantee against double jeopardy. Although the Connecticut constitution does not include a specific double jeopardy provision,[5] we have held that "the due process and personal liberty guarantees provided by article first,

---

[5] In *State* v. *Michael J.*, 274 Conn. 321, 875 A.2d 510 (2005), we discussed the historical development of the protection against double jeopardy under Connecticut law and noted that, during the 1965 constitutional convention, the delegates specifically rejected an amendment that would have added a double jeopardy clause to our constitution because they wished to "maintain then-existing law, even though they recognized that it afforded Connecticut citizens less protection than that provided by the United States constitution." Id., 352–53.

§§ 8[6] and 9,[7] of the Connecticut constitution . . . encompass the protection against double jeopardy." (Internal quotation marks omitted.) *State* v. *Kasprzyk*, 255 Conn. 186, 192, 763 A.2d 655 (2001). The protection afforded against double jeopardy under the Connecticut constitution "mirrors, rather than exceeds," that which is provided by the constitution of the United States. (Internal quotation marks omitted.) *State* v. *Michael J.*, 274 Conn. 321, 350, 875 A.2d 510 (2005). In a trial by jury, "[j]eopardy attaches once the jury has been selected and sworn. . . . *Illinois* v. *Somerville*, 410 U.S. 458, 467, 93 S. Ct. 1066, 35 L. Ed. 2d 425 (1973)." (Citation omitted.) *State* v. *Buell*, 221 Conn. 407, 413, 605 A.2d 539, cert. denied, 506 U.S. 904, 113 S. Ct. 297, 121 L. Ed. 2d 221 (1992).

The constitutional protection against double jeopardy includes the defendant's "valued right to have his trial completed by a particular tribunal."[8] (Internal quotation marks omitted.) *Arizona* v. *Washington*, 434 U.S. 497, 503, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978). "This right is not absolute, however, and may in some cases be subordinated to the public interest in affording the prosecutor one full and fair opportunity to present his

---

[6] Article first, § 8, of the Connecticut constitution provides in relevant part: "No person shall . . . be deprived of life, liberty or property without due process of law . . . ."

[7] Article first, § 9, of the Connecticut constitution provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

[8] In *Arizona* v. *Washington*, 434 U.S. 497, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978), the United States Supreme Court set forth the reasons behind the constitutional protection of a criminal defendant's right to have his trial completed by a particular tribunal: "[A second prosecution] increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial." Id., 503–505.

evidence to an impartial jury. [Id.], 505." (Internal quotation marks omitted.) *State* v. *Buell,* supra, 221 Conn. 413–14. Therefore, "[w]hen a criminal defendant objects to the declaration of a mistrial . . . and the mistrial is declared for reasons amounting to 'manifest necessity,' his right to have his trial completed by his chosen tribunal is no longer protected and the double jeopardy clause does not bar a second trial." *State* v. *Van Sant,* 198 Conn. 369, 377, 503 A.2d 557 (1986).

"The primary definition for when 'manifest necessity' justifies declaring a mistrial was articulated by the United States Supreme Court in *United States* v. *Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L. Ed. 165 (1824) . . . ." *State* v. *Kasprzyk,* supra, 255 Conn. 193. Justice Joseph Story, writing for the court in *Perez,* stated: "[I]n all cases of this nature, the law has invested [c]ourts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances . . . which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes . . . . [T]he faithful, sound, and conscientious exercise of this discretion . . . rests . . . upon the responsibility of the [j]udges, under their oaths of office." *United States* v. *Perez,* supra, 580.

Our standard of review for whether a mistrial was justified by manifest necessity is well settled. "Because of the importance of the defendant's right to have his trial concluded by a particular tribunal, 'the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate "manifest

necessity" for any mistrial declared over the objection of the defendant.' . . . With respect to construction of the terms 'manifest necessity,' a 'high degree' of 'necessity' is required before a conclusion may be reached that a mistrial is appropriate . . . ." (Citation omitted.) *State* v. *Van Sant*, supra, 198 Conn. 378–79, quoting *Arizona* v. *Washington*, supra, 434 U.S. 505–506. The United States Supreme Court has rejected "the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial." *Illinois* v. *Somerville*, supra, 410 U.S. 462; see also *United States* v. *Jorn*, 400 U.S. 470, 480, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971). We, too, have eschewed a mechanical application of the manifest necessity standard "because the 'high degree' of necessity mandated by that phrase can be found in a variety of circumstances." *State* v. *Van Sant*, supra, 379; see also *State* v. *Buell*, supra, 221 Conn. 414. Nevertheless, in analyzing this issue in prior cases, we have considered the following nonexclusive list of factors: (1) the timing of the events leading to the declaration of a mistrial; (2) whether the court and parties were taken by surprise; and (3) whether the court considered available alternatives to a mistrial. See *State* v. *Kasprzyk*, supra, 255 Conn. 203. In addition, we have stated that "a trial court's determination will not be upheld if the trial court reasonably could have avoided a mistrial, or if the court acted in an erratic or precipitous manner." Id., 203–204.

On appellate review, " 'the trial judge's decision whether manifest necessity exists to declare a mistrial should be afforded the "highest degree of respect." ' " *United States* v. *Millan*, 17 F.3d 14, 19–20 (2d Cir. 1993); see also *State* v. *Daniels*, 207 Conn. 374, 394–95 n.12, 542 A.2d 306 (1988) ("the trial court's assessment of the necessity for a mistrial is accorded great deference"). The United States Supreme Court "has long

favored the rule of discretion in the trial judge to declare a mistrial and to require another panel to try the defendant if the ends of justice will be best served . . . and . . . [has] consistently declined to scrutinize with sharp surveillance the exercise of that discretion." (Citation omitted; internal quotation marks omitted.) *Gori* v. *United States*, 367 U.S. 364, 368, 81 S. Ct. 1523, 6 L. Ed. 2d 901 (1961). Accordingly, we will not disturb the trial court's determination that there was manifest necessity in the absence of an abuse of discretion.[9] *United States*

[9] We note that our previous case law has not been entirely clear with respect to the standard of review that we apply to a trial court's decision to declare a mistrial on the ground of manifest necessity. Specifically, we have previously articulated the standard of review as follows: "Given the constitutionally protected interest involved, reviewing courts must be satisfied, in the words of Justice Story in *Perez*, that the trial judge exercised sound discretion in declaring a mistrial." (Internal quotation marks omitted.) *State* v. *Kasprzyk*, supra, 255 Conn. 194; accord *State* v. *Tate*, 256 Conn. 262, 279, 773 A.2d 308 (2001); *State* v. *Autorino*, 207 Conn. 403, 408, 541 A.2d 110, cert. denied, 488 U.S. 855, 109 S. Ct. 144, 102 L. Ed. 2d 116 (1988); *State* v. *Van Sant*, supra, 198 Conn. 379. Whether this standard is satisfied turns on the reviewing court's conclusion as to whether the trial court acted reasonably in declaring the mistrial, in light of the totality of the circumstances. This is the same inquiry that we engage in under the abuse of discretion standard. In any event, if there is any doubt as to what standard should be applied on appeal, United States Supreme Court and federal circuit court case law makes it clear that it is the abuse of discretion standard that is applied in reviewing a trial court's decision to declare a mistrial on the ground of manifest necessity. See, e.g., *Illinois* v. *Somerville*, supra, 410 U.S. 468; *United States* v. *Jorn*, supra, 400 U.S. 486; *United States* v. *Razmilovic*, 507 F.3d 130, 137 (2d Cir. 2007); *United States* v. *Millan*, supra, 17 F.3d 20; see also *United States* v. *Williams*, 205 F.3d 23, 36 (2d Cir.), cert. denied, 531 U.S. 885, 121 S. Ct. 203, 148 L. Ed. 2d 142 (2000). Accordingly, we take this opportunity to clarify our case law and explicitly apply the abuse of discretion standard to the present case.

We further note that the United States Supreme Court has applied a different standard of review, specifically, the "strictest scrutiny" standard of review, in cases in which there has been intentional misconduct on the part of the government. See *Arizona* v. *Washington*, supra, 434 U.S. 508 ("the strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the [s]tate to harass or to achieve a tactical advantage over the accused"). Because the present case does not concern any allegations of intentional misconduct on

v. *Millan*, supra, 20; see also *Illinois* v. *Somerville*, supra, 410 U.S. 468 (concluding that trial court's declaration of mistrial on ground of manifest necessity was not abuse of discretion); *United States* v. *Jorn*, supra, 400 U.S. 486–87 (applying abuse of discretion standard to trial court's decision to declare mistrial on ground of manifest necessity); *State* v. *Buell*, supra, 221 Conn. 420–21 (*Borden, J.*, concurring) (concluding that trial court abused its discretion in declaring mistrial on ground of manifest necessity); cf. *State* v. *Lucci*, 25 Conn. App. 334, 342, 595 A.2d 361 (applying abuse of discretion standard to trial court's failure to order "a mistrial on its own motion"), cert. denied, 220 Conn. 913, 597 A.2d 336 (1991). In determining whether a trial court abused its discretion, "[a] reviewing court looks for a manifest necessity by examining the entire record in the case without limiting itself to the actual findings of the trial court. . . . It is the examination of the propriety of the trial court's action against the backdrop of the record that leads to the determination [of] whether, in the context of a particular case, the mistrial declaration was proper." (Citations omitted; internal quotation marks omitted.) *State* v. *Van Sant*, supra, 198 Conn. 379.

Applying this standard of review to the present case, we conclude that the trial court did not abuse its discretion in declaring a mistrial on the ground of manifest necessity. The trial court reasonably concluded that manifest necessity existed on the basis of the totality of the circumstances because (1) Malone unexpectedly became ill during the trial, (2) no other prosecutor would have been able to assume the prosecution within a reasonable time in light of the complexity of the case, and (3) there were jurors who were already "chomping

the part of the state, we do not apply the "strictest scrutiny" standard of review but, rather, the more generally applicable abuse of discretion standard. See, e.g., *United States* v. *Millan*, supra, 17 F.3d 20 n.5.

at the bit" because of the time constraints that the court originally had estimated and because the jurors had prior plans that they wished to keep.

Our conclusion is consistent with our decision in *State* v. *Van Sant*, supra, 198 Conn. 369. In *Van Sant*, we held that the trial court in that case properly exercised its discretion in declaring a mistrial, over the defendant's objection, on the ground of manifest necessity when a key state's witness became ill while testifying. Id., 370, 384. The witness, a police detective, suffered a seizure on the stand while being cross-examined by defense counsel and was removed from the courthouse on a stretcher by medical personnel. Id., 370–71, 380 and n.8. In concluding that the trial court properly exercised its discretion in declaring a mistrial, we relied on five factors. See generally id., 380–82.

First, a key witness became seriously ill during trial, and his condition prevented him from testifying for an indefinite period. See id., 380. With regard to the witness' medical condition, we noted the significant circumstance that the trial judge personally saw the witness as "he keeled over the stand . . . ." (Internal quotation marks omitted.) Id. The judge stated that it was "obvious that there was something drastically wrong with [the witness]" and that he "was convinced that there was no malingering going on."[10] (Internal quotation marks omitted.) Id. In addition, the court found that ordering the witness to testify "could detrimentally affect his health." (Internal quotation marks omitted.) Id., 374. This finding was based on a letter from the witness' cardiologist and the testimony of the witness'

---

[10] Immediately prior to the witness' sudden illness, the witness "had become enmeshed in some inconsistency vis-a-vis his earlier testimony [relating to a] motion to suppress, which the trial court indicated raised questions about his trial testimony." *State* v. *Van Sant*, supra, 198 Conn. 380. In light of the timing of the witness' illness, the trial judge stated on the record that it was his belief that the witness was not feigning illness. Id.

family physician, both of whom indicated that, on the basis of the results of a cardiac stress test; id., 371–73; the witness should not be exposed to the " 'stressful procedure' of the court proceedings . . . ." Id., 382.

Second, "the trial court proceeded deliberately and not precipitously" in exercising its discretion and declaring the mistrial. Id., 381. Specifically, the trial court delayed declaring the mistrial for about three weeks after the witness' seizure. See id. Third, "the trial court properly . . . gave counsel the opportunity to be heard extensively on the matter." Id. Fourth, the court considered the double jeopardy implications of its ruling by carefully weighing "the defendant's right to have his trial completed," on the one hand, and "the public's interest in a fair trial and just judgment," on the other. Id., 382. Finally, the trial court "realistically considered the alternatives to a mistrial . . . ." Id., 381. The court reasonably concluded that a continuance was not a viable option because "[t]here was no fair basis [on] which to estimate when [the witness] could testify." Id., 382. In addition, the court determined that striking the testimony of the witness would not "resolve the problem"; id.; because the witness' testimony constituted "critical prosecution evidence . . . ." (Internal quotation marks omitted.) Id., 380.

On the basis of our decision in *Van Sant*, we conclude that the trial court in the present case did not abuse its discretion in declaring a mistrial. First, as with the state's witness in *Van Sant*, Malone became seriously ill during the trial, and his condition necessitated hospitalization, followed by a lengthy and indefinite period of convalescence. In addition, just as the trial judge in *Van Sant* personally observed the condition of the witness on the stand, the trial judge in the present case personally spoke with Malone on the telephone regarding the severity of his illness and concluded that it was evident that he "certainly . . . did not sound

good" and that "he [was] not going to be able to come back to this matter for a significant period of time."

Second, as with the trial court in *Van Sant*, the trial court in the present case "proceeded deliberately and not precipitously . . . ." *State* v. *Van Sant*, supra, 198 Conn. 381. The court did not rush to declare a mistrial after first learning of Malone's illness on June 24, 2007, but, rather, waited eleven days, until July 5, 2007, and until after he learned more about Malone's condition and the unavailability of a substitute prosecutor before taking such action. Third, prior to declaring the mistrial, the court properly gave counsel the opportunity to be heard. Fourth, the court considered the implications of its ruling and weighed the necessity of a mistrial against the defendants' right to have their trial completed. Specifically, the court stated: "I understand the necessity and the fact that, obviously, the [defendants] have much invested in [the] matter as well; and I certainly have taken that into consideration. But . . . [i]n the court's mind, it is not feasible that we continue this trial."

Finally, as with the trial court in *Van Sant*, the trial court in the present case considered the alternatives to a mistrial and reasonably concluded that they were not feasible.[11] The court found that a reasonable continuance was not a viable option because it was not known when Malone would be healthy enough to return. In addition, the court found that no other prosecutor would be able to substitute for Malone because of the complexity of the case.[12] This finding was based on

---

[11] "A trial judge has acted within his sound discretion in rejecting possible alternatives in granting a mistrial if reasonable judges could differ about the proper disposition, even [when], [i]n a strict literal sense, the mistrial [is] not necessary." (Internal quotation marks omitted.) *State* v. *Van Sant*, supra, 198 Conn. 381 n.10.

[12] Implicit in the trial court's finding is that the complexity of the case would prevent another prosecutor from stepping in *within a reasonable amount of time* because of the significant preparation time that would be required.

Whalen's representations in chambers and on the record, as well as the court's own observations, that the case was "very complex . . . ." Specifically, the court noted that the state already had offered more than 300 exhibits into evidence but had not yet reached "the heart of the case . . . ." The court further observed that the forensic accountants had not yet testified and that their testimony was expected to be lengthy. The court also considered the practicality of granting a lengthy continuance and its possible effect on all involved in the trial. See *State* v. *Van Sant*, supra, 198 Conn. 384 ("[t]he decision [of] whether [a] mistrial is manifestly necessary is 'a practical matter' "). Specifically, the court observed that there were "jurors who [were] already chomping at the bit . . . because of the time constraints that [the court] had originally estimated and because of the fact that these jurors [had] things that they had planned to do." The court was concerned that, if it had granted a lengthy continuance, it might have negatively impacted the impartiality of the jurors. See *State* v. *Autorino*, 207 Conn. 403, 411–12, 541 A.2d 110 (trial court's evaluation of significance of possible juror bias is "entitled to special respect"), cert. denied, 488 U.S. 855, 109 S. Ct. 144, 102 L. Ed. 2d 116 (1988). In particular, the court stated, "obviously, we have jurors to consider, who will be asked to decide the guilt or nonguilt of [the defendants]. . . . And I certainly would not want it to be to the [defendants'] detriment that we ask the [jurors] to come back under duress, so to speak, sometime in September . . . at absolute best, to decide [the defendants'] guilt or nonguilt." In sum, we conclude that our decision in *Van Sant* supports our conclusion in the present case that the trial court did not abuse its discretion in declaring a mistrial.

Our conclusion also is consistent with the decisions of courts from other jurisdictions that have reviewed

the propriety of a trial court's declaration of a mistrial on the ground of manifest necessity following the illness or death of a prosecutor. The general consensus that emerges from these cases is that a court properly exercises its discretion in declaring a mistrial when a prosecutor becomes seriously ill during trial such that he requires a lengthy absence, and no other prosecutor is able to step in to resume the trial within a reasonable period. See *Green* v. *State*, 52 Ark. App. 244, 248, 917 S.W.2d 171 (1996) (manifest necessity established when prosecutor became ill and substitution of deputy prosecutor was precluded by virtue of deputy prosecutor's conflict with one juror); *State* v. *Critelli*, 237 Iowa. 1271, 1273, 1278–79, 24 N.W.2d 113 (1946) (trial court properly declared mistrial when prosecutor became ill during trial, no other prosecutor could step in within reasonable time because of complexity of case, and jury had been sequestered); *State* v. *Saavedra*, 108 N.M. 38, 40–43, 766 P.2d 298 (1988) (mistrial reasonable when one week continuance necessitated by illness of defense counsel was followed by prosecutor's scheduled back surgery and neither defendant nor state could obtain substitute counsel due to complexity of case); *State* v. *Kirby*, 269 S.C. 25, 29–30, 236 S.E.2d 33 (1977) (manifest necessity established when prosecutor died during trial and assistant prosecutor was unable to take over because he was "totally unprepared to prosecute the remainder of the case" and "in no emotional condition to continue the case"). Conversely, courts in other jurisdictions have held that the declaration of a mistrial on the basis of the illness of the prosecutor is not reasonable when a substitute prosecutor could have resumed the prosecution, when a reasonable continuance could have resolved the problem or when the record contained inadequate findings. See *United States* v. *Watson*, 28 F. Cas. 499, 500–501 (S.D.N.Y. 1868) (No. 16,651) (mistrial not reasonable when record did not indicate

that prosecutor's illness occurred after jury was sworn or that it was impossible for another prosecutor to conduct trial); *People* v. *McJimson*, 135 Cal. App. 3d 873, 879–81, 185 Cal. Rptr. 605 (1982) (mistrial not reasonable when prosecutor was absent due to short-term illness and substitute prosecutor could have been assigned to case); *Jourdan* v. *State*, 275 Md. 495, 510–12, 341 A.2d 388 (1975) (no manifest necessity when prosecutor became ill from exhaustion during trial and another prosecutor could have been prepared within short period of time to conduct trial or trial could have been continued for few days until another prosecutor could resume prosecution). The present case is akin to those of our sister jurisdictions in which the declaration of a mistrial was held to have been reasonable because Malone's illness was serious such that he required a lengthy absence, and no other prosecutor was able to step in to conduct the trial due to the complexity of the case.

Notwithstanding the reasonableness of the trial court's exercise of discretion in the present case, the defendants claim that the trial court's finding of manifest necessity was improper because the trial court failed to explore the alternative of a "reasonable, even if somewhat lengthy, continuance in order to allow another [prosecutor] to assume responsibility for the case." Specifically, the defendants claim that the trial court's reliance on Whalen's uncontroverted representations that, due to the complexity of this case, another prosecutor would not be able to replace Malone, was, "without more . . . insufficient to outweigh [the] defendants' valued right to have the original jury decide the case." In addition, the defendants claim that the trial court improperly failed to poll the jurors on their "availability in September [of 2007], *or beyond.*" (Emphasis in original.) These claims have no merit.

First, as we previously discussed, the record clearly indicates that the trial court considered the alternative of a lengthy continuance but reasonably rejected such alternative on the basis of its finding that no other prosecutor was able to step in within a reasonable amount of time due to the complexity of the case, and out of concern that a lengthy continuance might negatively impact the impartiality of the jurors. In making its findings, the trial court was entitled to credit Whalen's representations regarding the unavailability of a substitute prosecutor. See *State* v. *Michael J.*, supra, 274 Conn. 335 ("[A]ttorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath. . . . Thus, the trial court was entitled to credit the prosecutor's assertions and could have relied on them in support of its finding . . . ." [Citation omitted; internal quotation marks omitted.]); see also *State* v. *Van Sant*, supra, 198 Conn. 383 ("[A] trial court considering the exigencies of a potential mistrial situation cannot be bound by the strict rules of evidence applicable at formal proceedings . . . . In such a situation a court must be free to act [on] the information at hand, [as] long as it is reliable." [Internal quotation marks omitted.]). We find it significant that the trial court's findings regarding the feasibility of replacing Malone with another prosecutor were based in part on the court's own observations regarding the complexity of the case. Moreover, the defendants never challenged Whalen's representations or the trial court's own observation that the case was "very complex" prior to the court's declaration of the mistrial. To the contrary, when defense counsel was afforded the opportunity to address the trial court, he acknowledged that the case was complex and merely argued that "the state . . . should have been prepared" and that "it would have been wise [for] the state [to have obtained] a second

lawyer in a case like this [one]." Finally, on appeal, the defendants have not cited to any legal authority in support of their claim that the trial court's reliance on Whalen's representations, by itself, was insufficient as a matter of law to justify the declaration of a mistrial.[13]

---

[13] We note that, in *Van Sant,* the trial court conducted an evidentiary hearing at which the family physician who examined the ill witness testified regarding the witness' condition. *State* v. *Van Sant,* supra, 198 Conn. 371. In addition, the trial court in *Van Sant* based its finding of manifest necessity in part on a letter from the witness' cardiologist. See id., 373. Our decision in *Van Sant,* however, does not require such a formal evidentiary hearing to be held in all cases in order to justify a finding of manifest necessity. Instead, we evaluate challenges to the propriety of a declaration of a mistrial on the basis of the specific circumstances of each case. See id., 383 ("[A] trial court considering the exigencies of a potential mistrial situation cannot be bound by the strict rules of evidence applicable at formal proceedings . . . . In such a situation a court must be free to act [on] the information at hand, [as] long as it is reliable." [Internal quotation marks omitted.]). In *Van Sant,* the trial court held an evidentiary hearing because the witness "had become enmeshed in some inconsistency vis-a-vis his earlier testimony [relating to a] motion to suppress, which the trial court indicated raised questions about his trial testimony." Id., 380. Thus, the trial court in *Van Sant* needed to ensure that there was "no malingering going on." (Internal quotation marks omitted.) Id. In addition, the trial court's finding of manifest necessity in *Van Sant* was subject to the "strictest scrutiny" standard of review on appeal; (internal quotation marks omitted) id.; because the basis for the mistrial was the unavailability of critical prosecution evidence. See id.; see also *Arizona* v. *Washington,* supra, 434 U.S. 508 ("the strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the [s]tate to harass or to achieve a tactical advantage over the accused").

In contrast, in the present case, there were no concerns of malingering and no reason to doubt the veracity of the representations of Malone and Whalen. Moreover, unlike in *Van Sant,* in which "the strictest scrutiny" standard of review applied; (internal quotation marks omitted) *State* v. *Van Sant,* supra, 198 Conn. 380; we apply the abuse of discretion standard of review in the present case. Therefore, the trial court in the present case was entitled to credit those representations and did not abuse its discretion in failing to hold a formal evidentiary hearing.

Our conclusion also is consistent with that reached by the Supreme Court of South Carolina in *State* v. *Kirby,* supra, 269 S.C. 25. In *Kirby,* there was no indication that the trial court held an evidentiary hearing prior to declaring a mistrial following the death of the prosecutor. Rather, it appears that the trial court based its decision to declare a mistrial on its own observations

Under these circumstances, we cannot conclude that the trial court abused its discretion in declaring a mistrial.

The defendants' claim that the trial court improperly failed to poll the jurors on their "availability in September [of 2007], *or beyond*"; (emphasis in original); also is without merit. The defendants claim that our decision in *State* v. *Tate*, 256 Conn. 262, 773 A.2d 308 (2001), required the trial court to poll the jurors as to their availability after a continuance as part of the court's duty to explore alternatives to declaring a mistrial. We disagree and conclude that the defendants' reliance on *Tate* is misplaced. In *Tate*, "the defendant [James Tate] asked the trial court to inquire of the jury reporting its deadlock whether it had, in fact, reached a partial verdict." Id., 285. Tate argued that, if the jury had found him not guilty of the murder charge but was deadlocked with respect to one of the lesser included offenses, then the state would be precluded from retrying him on the ground of double jeopardy. See id., 275, 285–86. The trial court declined Tate's request and, over Tate's objection, declared a mistrial. Id., 285–86. On appeal, we held that the trial court improperly declared a mistrial and concluded that the trial court should have polled the

that the assistant prosecutor was "totally unprepared to prosecute the remainder of the case"; id., 29; and "was in no emotional condition to continue the case." Id., 29–30. On appeal, the court held that, under the circumstances, "manifest necessity for the mistrial was clearly established." Id., 29.

Although "[t]he [United States] [c]onstitution does not require the trial judge to . . . conduct a hearing"; *United States* v. *Bates*, 917 F.2d 388, 397 n.12 (9th Cir. 1990); the better practice would have been for the trial court in this case to inquire in greater detail as to the feasibility of having another prosecutor take over the case, so as to rule out any question as to the necessity of the mistrial. On appeal, however, we do not review the trial court's actions to determine whether they accord with the "best practices," but, rather, we review them for an abuse of discretion. In the present case, we conclude that, although the trial court did not take the "best" course of action, it nevertheless did not abuse its discretion.

jury, as Tate requested, because, "[h]ad the jury been asked whether it had reached a verdict on the murder charge, public justice would not have been defeated, or even compromised." Id., 286. If the jury responded that it had not reached a verdict on the murder charge, then there would have been a proper basis for a mistrial. Id. If, however, the jury had found Tate not guilty of the murder charge but was deadlocked with respect to one of the lesser included offenses, then Tate would have been entitled to an acquittal on the murder charge, and his "valued right [to have his trial completed by a particular tribunal] would have been upheld." (Internal quotation marks omitted.) Id. Therefore, "[t]here was no necessity at all . . . to declare a mistrial before making the inquiry *requested*." (Emphasis added.) Id. In *Tate*, we explicitly emphasized, however, that, "in the absence of a request," the trial court does not have "an obligation to make such an inquiry of the jury [sua sponte]." Id., 286 n.16.

*Tate* is clearly distinguishable from the present case. Unlike in *Tate*, the subject of the requested inquiry in this case was not whether the jurors had reached a partial verdict but, rather, the jurors' availability after a lengthy continuance. In addition, unlike the usefulness of the jury inquiry in *Tate*, a jury inquiry in the present case would have been futile in light of the uncertainty regarding when Malone would be able to return to trial and the impracticality of having another prosecutor step in mid-trial. See *State* v. *Van Sant*, supra, 198 Conn. 382 (continuance not feasible because "[t]here was no fair basis [on] which to estimate when [the witness] could testify"). Lastly, unlike the defendant in *Tate*, the defendants in the present case did not ask the court to make any inquiry of the jury.[14] Accordingly, *Tate* is inapposite, and the defendants' claim is without merit.

---

[14] At oral argument, appellate counsel intimated that, prior to the trial court's declaration of a mistrial, defense counsel requested the trial court to poll the jurors as to their availability after a continuance. The transcript

The decision denying the defendants' motion to dismiss is affirmed.

In this opinion ROGERS, C. J., and PALMER, VERTEFEUILLE and McLACHLAN, Js., concurred.

KATZ, J., dissenting. It is black letter law that, as a part of the constitutional protection against multiple prosecutions, " 'the [d]ouble [j]eopardy [c]lause affords a criminal defendant a valued right to have his trial completed by a particular tribunal.' *Oregon* v. *Kennedy*, 456 U.S. 667, 671–72, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982)." *State* v. *Butler*, 262 Conn. 167, 174, 810 A.2d 791 (2002). In order to safeguard this right adequately, before a trial court properly may declare a mistrial, it is the state's heavy burden to prove manifest necessity and the trial court's responsibility to give due consideration to feasible alternatives in determining whether the state has satisfied that burden. Although a trial court's decision to order a mistrial is entitled to some deference, in my view, in the present case, it acted improperly because the process by which it reached that determination does not reflect the requisite scrupulous, sound exercise of discretion. I reach this conclusion because the record did not reflect an adequate basis to inform the court's decision to order a mistrial in lieu of other alternatives. Specifically, there was an inadequate basis from which the trial court could make a reasoned determination that it was not feasible to order a continuance to allow substitute counsel to take over the case for the state. That deficiency resulted from both the state's failure to provide relevant information to the trial court and the trial court's failure to make appropriate inquiries. Because the majority's

from the July 5, 2007 proceedings clearly reveals that no such request was made, however. Although we assume that this was an inadvertent mistake, we caution counsel to be more careful with respect to any representations that counsel might make to this court.

sanction of this inadequate effort is unduly deferential[1]

[1] The majority concludes that there are two possible levels of scrutiny afforded to the trial court's decision regarding whether manifest necessity exists, strict or highly deferential, and that the present case necessarily requires the highly deferential standard by default because it does not involve the circumstances specifically identified by the United States Supreme Court under which strict scrutiny applies. Several courts, however, have characterized those two standards as extremes at either end of a *spectrum* of degrees of deference accorded, depending on the basis for the mistrial. See, e.g., *Baum* v. *Rushton*, 572 F.3d 198, 207 (4th Cir. 2009); *United States* v. *Campbell*, 544 F.3d 577, 581 (5th Cir. 2008), cert. denied, 555 U.S. 1145, 129 S. Ct. 1019, 173 L. Ed. 2d 308 (2009); *United States* v. *Wecht*, 541 F.3d 493, 505–508 (3d Cir.), cert. denied, 555 U.S. 1049, 129 S. Ct. 658, 172 L. Ed. 2d 616 (2008); *United States* v. *Berroa*, 374 F.3d 1053, 1057 (11th Cir. 2004), cert. denied, 543 U.S. 1076, 125 S. Ct. 932, 160 L. Ed. 2d 817 (2005); *United States* v. *Stevens*, 177 F.3d 579, 583 (6th Cir. 1999); *United States* v. *Ruggiero*, 846 F.2d 117, 123 (2d Cir.), cert. denied, 488 U.S. 966, 109 S. Ct. 491, 102 L. Ed. 2d 528 (1988); see also *Arizona* v. *Washington*, 434 U.S. 497, 510, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978) (citing "spectrum of trial problems which may warrant a mistrial and which vary in their amenability to appellate scrutiny"). At one end of the spectrum, strict scrutiny has been applied when the mistrial either is prompted by the unavailability of critical prosecution evidence or is being used by the prosecution to gain a tactical advantage, whereas, at the other end of the spectrum, great deference has been accorded when the mistrial results from the classic grounds for a mistrial, a jury deadlock. See *Baum* v. *Rushton*, supra, 207 (citing Supreme Court case law to this effect). As the court in *Baum* noted: "Other cases lie somewhere between these two extremes on the spectrum of necessity, and may (or may not) satisfy the manifest necessity test." Id. The facts of the present case are not akin to jury deadlock or even jury bias, which "lies on the spectrum between these two extremes but is considered 'an area where the trial judge's determination is entitled to special respect.' " *United States* v. *Stevens*, supra, 583. Moreover, I question whether stricter scrutiny may be called for in a case, such as the present one, in which the state is wholly responsible for the mistrial. Nonetheless, I need not determine whether two tiers or a spectrum of deference should be accorded to a trial court's ultimate decision to order a mistrial because, in the present case, the process by which the trial reached its conclusion does not reflect the requisite sound exercise of its discretion. See *United States* v. *Wecht*, supra, 507 (" '[T]he deference accorded the trial judge's finding of manifest necessity can disappear, even in the classic case of a hung jury, when the trial judge has not exercised sound discretion.' [*United States* v. *Berroa*, supra, 1057] . . . . Exactly how much deference is lessened is not an exact science: we still are much more likely to sustain a mistrial declaration based on a genuinely deadlocked jury than on any other basis, but our review will be somewhat more rigorous when we perceive procedural flaws in a [D]istrict [C]ourt's decision." [Citation

and inconsistent with the constitutional rights of the defendants, Richard Anderson and Janice Anderson, I respectfully dissent.

The majority has set forth the general principles regarding declarations of mistrial, which need not be repeated. I would highlight, however, the following essential obligations of the state, the trial court and the reviewing court. "[T]he words manifest necessity appropriately characterize the *magnitude* of the prosecutor's burden. *Arizona* v. *Washington,* [434 U.S. 497, 505, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978)]. . . . [That] burden is a *heavy* one. . . . Id. . . . [A] *high* degree of necessity is required before a conclusion may be reached that a mistrial is appropriate . . . . Id., [506]." (Emphasis added; internal quotation marks omitted.) *State* v. *Tate,* 256 Conn. 262, 278, 773 A.2d 308 (2001). "A trial judge must therefore engage in a '*scrupulous* exercise of judicial discretion'; *United States* v. *Jorn,* [400 U.S. 470, 485, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971)];[2]

---

omitted.]); *United States* v. *Razmilovic,* 507 F.3d 130, 140 (2d Cir. 2007) ("[i]n these circumstances, where the record does not indicate that there was genuine deadlock [by the jury], and the court has not provided an explanation for its conclusion or pointed to factors that might not be adequately reflected on a cold record, we are unable to satisfy ourselves that the trial judge exercised 'sound discretion' in declaring a mistrial"); see also footnote 2 of this dissenting opinion.

[2] Although the scrupulous exercise of discretion language is derived from the plurality opinion in *United States* v. *Jorn,* supra, 400 U.S. 485, many Circuit Courts of Appeals, this court and many other state courts have adopted and applied that standard. See, e.g., *Baum* v. *Rushton,* 572 F.3d 198, 207 n.5 (4th Cir. 2009); *United States* v. *Taylor,* 569 F.3d 742, 746 (7th Cir. 2009); *United States* v. *Lara-Ramirez,* 519 F.3d 76, 83 (1st Cir. 2008); *United States* v. *Huang,* 960 F.2d 1128, 1134 (2d Cir. 1992); *United States* v. *Dixon,* 913 F.2d 1305, 1311, 1313 (8th Cir. 1990); *Jones* v. *Hogg,* 732 F.2d 53, 56–57 (6th Cir. 1984); *United States* v. *Grasso,* 552 F.2d 46, 52 (2d Cir. 1977); *United States* v. *Tinney,* 473 F.2d 1085, 1089 (3d Cir.), cert. denied, 412 U.S. 928, 93 S. Ct. 2752, 37 L. Ed. 2d 156 (1973); *State* v. *Saunders,* 267 Conn. 363, 394, 838 A.2d 186, cert. denied, 541 U.S. 1036, 124 S. Ct. 2113, 156 L. Ed. 2d 722 (2004); *People* v. *Segovia,* 196 P.3d 1126, 1133 (Colo. 2008); *Swanson* v. *State,* 956 A.2d 1242, 1244 (Del. 2008); *People* v. *Edwards,* 388 Ill. App. 3d 615, 623, 902 N.E.2d 1230 (2009); *State* v. *Fassero,* 256 S.W.3d 109, 115 (Mo. 2008); *State* v. *Kornbrekke,* 156 N.H. 821, 829, 943 A.2d 797

in order to 'assure himself that the situation warrants action on his part foreclosing the defendant from a potentially favorable judgment by the tribunal.' Id., 486." (Emphasis added.) *State* v. *Buell*, 221 Conn. 407, 415, 605 A.2d 539, cert. denied, 506 U.S. 904, 113 S. Ct. 297, 121 L. Ed. 2d 221 (1992). "All possible alternatives to a mistrial must be considered, employed *and found wanting* before declaration of a mistrial over the defendant's objection is justified. *State* v. *Pugliese*, 120 N.H. 728, 730, 422 A.2d 1319 (1980)." (Emphasis added; internal quotation marks omitted.) *State* v. *Tate*, supra, 286–87; accord *United States* v. *Tinney*, 473 F.2d 1085, 1089 (3d Cir.) (*"Jorn* places on the trial judge a duty to exhaust all other reasonable possibilities before deciding to foreclose [a defendant's] option to proceed. . . . The scrupulous exercise of that discretion means that he must seek out and consider all avenues of cure to avoid trial abortion." [Internal quotation marks omitted.]), cert. denied, 412 U.S. 928, 93 S. Ct. 2752, 37 L. Ed. 2d 156 (1973).

"A reviewing court looks for manifest necessity by examining the entire record in the case without limiting itself to the actual findings of the trial court. . . . It is the examination of the propriety of the trial court's action against the backdrop of the record that leads to the determination [of] whether, in the context of a particular case, the mistrial declaration was proper. Given the constitutionally protected interest involved, reviewing courts must be satisfied . . . that the trial judge exercised *sound* discretion in declaring a mistrial." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Van Sant*, 198 Conn. 369, 379, 503 A.2d 557 (1986); accord *United States* v.

(2008); *State* v. *Voigt*, 734 N.W.2d 787, 791 (N.D. 2007); *State* v. *Robinson*, 146 Wash. App. 471, 479, 191 P.3d 906 (2008); see also *United States* v. *Dinitz*, 424 U.S. 600, 607, 96 S. Ct. 1075, 47 L. Ed. 2d 267 (1976) (citing this language from *Jorn*).

*Scott*, 437 U.S. 82, 96, 98 S. Ct. 2187, 57 L. Ed. 2d 65 (1978) ("a trial judge's characterization of his own action cannot control the classification of the action" [internal quotation marks omitted]). Sound discretion requires that, although the trial court need not state expressly its findings on the record, the record must reflect an adequate factual basis to inform the court's reasoned decision to order a mistrial in lieu of other alternatives that would allow the trial to continue.[3] See *Arizona* v. *Washington*, supra, 434 U.S. 517 (no constitutional impropriety when "basis for the trial judge's mistrial order is adequately disclosed by the record" to demonstrate "deliberate exercise of his discretion");

---

[3] See *Ross* v. *Petro*, 515 F.3d 653, 664 (6th Cir. 2008) ("the failure of a lower court to explicitly explain its ruling in terms of the governing standard is not determinative, as long as the record provides sufficient justification for the ruling"), cert. denied sub nom. *Ross* v. *Rogers*, 555 U.S. 1099, 129 S. Ct. 906, 173 L. Ed. 2d 109 (2009); *United States* v. *Razmilovic*, 507 F.3d 130, 140 (2d Cir. 2007) ("[w]hile a trial judge is not constitutionally mandated to explain the decision to declare a mistrial if the record provides significant justification . . . when we are unable to discern from the record that a jury was genuinely deadlocked, a trial judge's explanation, elaborating on the decision to declare a mistrial, can aid our inquiry" [citation omitted; internal quotation marks omitted]); *United States* v. *Bates*, 917 F.2d 388, 397 n.12 (9th Cir. 1990) ("[t]he [c]onstitution does not require the trial judge to consider the alternatives on the record or conduct a hearing . . . but the record must support the finding that manifest necessity justified the mistrial" [citation omitted]); *United States* v. *Smith*, 621 F.2d 350, 351 (9th Cir. 1980) ("The record gives no indication that the court here even considered the possibility of a continuance before ordering a mistrial. Since the court did not consider, *or have before it the facts necessary for thorough consideration of*, an obvious alternative to a mistrial, we cannot say that there was a 'manifest necessity' to terminate the trial at that time." [Emphasis added.]); *Dunkerley* v. *Hogan*, 579 F.2d 141, 146 (2d Cir. 1978) ("Although findings of fact or a statement of the trial court's reasons for the declaration of a mistrial are not constitutionally mandated, the failure of the record to provide adequate support for the trial judge's action may bar a retrial. It is not enough that plausible reasons might conceivably exist for the trial judge's action. If we are to review his exercise of discretion, to which deference should ordinarily be accorded, we must know the basis for that decision as disclosed by the record, including argument of counsel prior to the judge's ruling." [Internal quotation marks omitted.]), cert. denied, 439 U.S. 1090, 99 S. Ct. 872, 59 L. Ed. 2d 56 (1979).

see also *United States* v. *Lara-Ramirez*, 519 F.3d 76, 84–85 (1st Cir. 2008) ("Our task on appeal is to determine whether the district judge's declaration of a mistrial was reasonably necessary under all the circumstances. . . . We are guided in this determination by consideration of three interrelated factors: [i] whether alternatives to a mistrial were explored and exhausted; [ii] whether counsel had an opportunity to be heard; and [iii] whether the judge's decision was made after sufficient reflection." [Citations omitted; internal quotation marks omitted.]); *United States* v. *Bates*, 917 F.2d 388, 395–96 (9th Cir. 1990) ("When it is not patently clear that reversal is certain, the reviewing court must scrutinize the record, since the Supreme Court requires the courts of appeal to ascertain that the trial court exercised its discretion properly in the circumstances that confronted it. The Supreme Court and appellate courts have relied on four indicators in determining whether the trial court abused its discretion. Has the trial judge [1] heard the opinions of the parties about the propriety of the mistrial, [2] considered the alternatives to a mistrial and chosen the alternative least harmful to a defendant's rights, [3] acted deliberately instead of abruptly, and [4] properly determined that the defendant would benefit from the declaration of mistrial?"). In determining whether the granting of a mistrial has violated the double jeopardy clause, "[w]e resolve any doubt in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain, and arbitrary judicial discretion." (Internal quotation marks omitted.) *Downum* v. *United States*, 372 U.S. 734, 738, 83 S. Ct. 1033, 10 L. Ed. 2d 100 (1963); accord *Sanchez* v. *United States*, 919 A.2d 1148, 1151 (D.C. 2007).

Turning to the facts of the present case, I agree that the trial court did not abuse its discretion in deciding that continuing the case until Senior Assistant State's

Attorney John Malone recovered from his illness was not a feasible alternative to declaring a mistrial. The trial court directly communicated with Malone to affirm his unavailability and to assess the seriousness of his condition and, as a result, learned of Malone's diagnosis of pneumonia and imminent hospitalization. There is nothing in the record to raise any question as to the veracity of these facts. In light of the facts gleaned upon this inquiry, the trial court reasonably concluded that Malone's return date was too indeterminate to allow a continuance pending his return.

The aforementioned inquiry and the facts gleaned from that inquiry stand in stark contrast to the basis, however, for the trial court's determination that it was not feasible to order a continuance to allow substitute counsel to take over the case. The only statement made on the record by the state relative to this matter was the following sweeping, self-serving statement by State's Attorney John Whalen: "I don't think *anyone* could step in at this point and try to salvage this case until [Malone] returns or finish it if he doesn't return."[4] (Emphasis added.) Whalen did not represent that anyone from his office actually had inquired into the availability of other state's attorneys in the crime fraud unit to take over the case, nor, *if* such an inquiry had been made, how this ultimate determination had been reached. Cf. *United States* v. *Lynch*, 598 F.2d 132, 135–36 (D.C. Cir. 1978) (no abuse of discretion to order mistrial on basis of judge's illness after initial two week continuance and

---

[4] Because the state took such an unequivocal position, the defendants, in addition to stating clearly that they wanted to go forward with the present jury, limited their response to the court as follows: "[T]he state, with all due respect, should have been prepared. Knowing a trial of this dimension that was projected to be five weeks of presenting of evidence by the state with that many exhibits, it would have been wise had the state got a second lawyer in a case like this." I note, however, that the defendants had no burden to produce evidence or make specific objections to the mistrial decision. See *State* v. *Van Sant*, supra, 198 Conn. 381–82 n.11.

administrative judge's later inquiries determined that no other judges were available to substitute), cert. denied, 440 U.S. 939, 99 S. Ct. 1287, 59 L. Ed. 2d 498 (1979). Nor did he provide any information to the court about the preparation time that would be necessary for such a substitution, information that could have been obtained from Malone.[5] Whalen never brought to the court's attention the fact that other members of the office of the chief state's attorney previously had been involved in the case,[6] and there is no evidence that anyone from that office had ascertained whether assistance by these staff members could minimize the preparation time for substitute counsel. In sum, the state did *nothing* to prove that a continuance with substitute counsel was not a feasible option. Accordingly, on the

---

[5] The state later essentially conceded that it had not provided such information to the court on the record prior to the declaration of a mistrial. In its second request for an evidentiary hearing and factual findings, which was filed along with its opposition to the defendants' motion to dismiss, the state asserted: "[T]he trial court was not presented with certain evidence concerning the preparation time required for a substitute assistant state's attorney to familiarize himself/herself with the case and to resume trial, apart from the complexity of the trial itself to the point at which it was interrupted and the large number of exhibits, because [Malone] who was the only person knowledgeable about the necessary preparation time was the attorney who had tried the cases and was hospitalized on July 5 [2007] and unable to travel to court to provide that evidence to the presiding judge." We note that the fact that the trial court had spoken directly with Malone on the same day that it ordered the mistrial suggests that someone from the office of the chief state's attorney also could have spoken to Malone. Alternatively, because other members of the office of the chief state's attorney had been involved in the case; see footnote 6 of this dissenting opinion; information could have been sought from them.

[6] According to the affidavit in support of Richard Anderson's arrest warrant, at least three people from the office of the chief state's attorney, in addition to Malone, had been involved in the case: (1) Michael O'Connor, an inspector for the computer crimes task force with thirty years of experience, who was the affiant in the arrest warrant and had investigated the allegations of the complainant, Luigi Chinetti, Jr.; (2) Vic Sharma, a forensic fraud examiner, who had met with the complainant in 2003 and was scheduled to testify in the cases for the state; and (3) Senior Assistant State's Attorney Gary Nicholson, who also had met with the complainant in 2003.

basis of this record, the state's position essentially was, first, as evidenced by Whalen's statement, that *no one other than Malone* could prosecute the case, and, second, as evidenced by the state's failure to provide any relevant information to the court, that the trial court should defer to the *state's* assessment of the feasibility of continuing the case with substitute counsel. Under these circumstances, I question how the state met its "heavy" burden of proving that a mistrial was a manifest necessity.

Despite the state's failure to provide such information and its responsibility in creating the situation at hand by assigning only one attorney to what it now characterizes as a highly complicated case,[7] the trial court made no inquiries on the record regarding facts relevant to the feasibility of a continuance with substitute counsel. In the absence of a clear record, however, such inquiries are an essential aspect of the soundness of the exercise of the court's discretion. Compare *Fulton* v. *Moore*, 520 F.3d 522, 529 (6th Cir. 2008) (concluding that manifest necessity standard was met when, inter alia, trial judge "asked defense counsel how long a period would be needed to prepare under the amended indictment, demonstrating that he considered calling the jury back at a later date") with *United States* v. *Lara-Ramirez*, supra, 519 F.3d 87 ("Although the [D]istrict [C]ourt has broad discretion to fashion an appropriate procedure for assessing whether the jury has been exposed to substantively damaging information, and if so, whether cognizable prejudice is an inevitable and ineradicable concomitant of the jury's exposure to an improper outside influence . . . the judge does not have discretion

---

[7] The state look a slightly different position in its motion to consolidate the cases against the two defendants. In that motion, the state represented: "Each information is supported by a relatively uncomplicated series of facts that will not be confusing to the jury when presented in the course of the same trial . . . ."

to refuse to conduct any inquiry at all regarding the magnitude of the taint-producing event and the extent of the resulting prejudice. Accordingly, the [D]istrict [C]ourt's investigation in this case fell short of the scrupulous exercise of judicial discretion required to support the mistrial declaration." [Citation omitted; internal quotation marks omitted.]) and *Camden* v. *Circuit Court of the Second Judicial Circuit*, 892 F.2d 610, 621 (7th Cir. 1989) (Posner, J., dissenting) (reaching manifest necessity issue not reached by majority and concluding that no manifest necessity existed for mistrial on basis of juror bias when trial court had failed to make inquiry to jurors and biased juror could be replaced with alternate). The trial court apparently determined that it could glean sufficient facts from the record to conclude that the state had met its burden of establishing manifest necessity. I therefore turn to those facts.

First, the trial court, *Schimelman, J.*, stated that the case was complicated, pointing to the more than 300 exhibits that had been submitted in the eight days of trial as evidence of that fact, and, therefore, concluded that substitute counsel would require significant preparation time. I would agree that the case was not a simple one.[8] A review of the record makes clear, however, that the overwhelming majority of the exhibits submitted were simply checks that had been introduced in short order on a single day of trial.[9] The record also reflects

---

[8] I would also point out, however, that public defenders are all too familiar with circumstances wherein they routinely are assigned to cases on short notice and the trial court nonetheless expects them to quickly familiarize themselves with the details of the case and to provide a competent defense. I see no reason why there should be a double standard for the state, especially when the right to protection against double jeopardy is implicated and the state has chosen to assign a single state's attorney to a case that it deems complex.

[9] The log for the exhibits reveals that 80 percent of the approximately 350 state exhibits were introduced on the same day, and almost all of these exhibits were checks. According to the trial court's daybook, on that day, three witnesses testified for brief periods ranging from ten to fifty minutes.

that the most complicated testimony, that of the foren-
sic accountants, had not yet begun. Therefore, a contin-
uance would not have impaired the jury's ability to
recall the most complicated aspects of the case.

Second, the trial court pointed to the fact that there
were jurors who were impatient because of the original
trial schedule of five and one-half weeks, plans that
jurors had made and the delay that already had
occurred.[10] The trial court stated on the record, how-
ever, that it had considered polling the jury to determine
whether a continuance until September, 2007, was feasi-
ble when it had thought that Malone might be able to
return by then. It did not explain why such a continu-
ance was a viable option under those circumstances,
but not for substitute counsel. Of course, because the
state had provided no date by which it could be pre-
pared to proceed with substitute counsel and the trial
court declined to inquire into that matter, the court had
no basis on which to poll the jury as to its availability
in September or any other time. See *United States* v.
*Lara-Ramirez*, supra, 519 F.3d 87–88 ("In its written
opinion denying [the defendant's] motion to dismiss,
the court stated that, '[i]n view of all the circumstances,
cautioning the jurors as to their ability to render a
verdict discarding any reference to the Bible would
have been self-defeating.' We do not understand the
basis for these generalities. Although a more developed
record might have supported findings that the Bible had
played a central role in deliberations and that individual
jurors would not have been able to disregard its influ-

---

[10] Given the original scheduled end date of the trial, near the end of July,
2007, the most reasonable assumption is that these jurors had summer
vacation plans. Indeed, in its memorandum of law in opposition to the
defendants' motion to dismiss the case, the state asserted: "It must be
remembered that the trial began in late spring and extended into the summer
months, a time when many people take their annual vacation." If that were
the case, the jurors might have been more amenable to a long continuance
rather than a short one.

ence, we see no basis for such findings in this record."); *United States ex rel. Russo* v. *Superior Court*, 483 F.2d 7, 15–16 (3d Cir. 1973) (concluding that trial court's determination that jury was too exhausted to continue deliberations improper in absence of inquiries as to jurors' physical condition or their progress toward reaching verdict and citing *United States* v. *Lansdown*, 460 F.2d 164, 169 [4th Cir. 1972], which held that conclusion of inability of jury to reach verdict must be supported by "something in addition to" trial court's decision that jury had deliberated "long enough"), cert. denied, 414 U.S. 1023, 94 S. Ct. 447, 38 L. Ed. 2d 315 (1973).

With regard to the jury, however, there is no indication that the trial court gave any weight to the fact that it had taken one month to select this jury. Nor is there any indication that the court considered the fact that there were four alternate jurors, some of whom might have been willing to serve in the place of any of the six jurors who might have been unavailable at a later date. Rather, the trial court suggested that, if it were to order a continuance, the jury might be prejudiced against the defendants. The defendants, however, had asserted their desire to continue with this jury. In the absence of some concrete reason to believe that the jury would have such bias, the trial court's speculation should not override the defendants' "valued right to have [their] trial completed by a particular tribunal." (Internal quotation marks omitted.) *State* v. *Butler*, supra, 262 Conn. 174; see also *United States* v. *Shafer*, 987 F.2d 1054, 1058 (4th Cir. 1993) ("As an initial matter, we must put aside any statements by the [D]istrict [C]ourt that the mistrial was partially motivated by concerns of prejudice to the defense. . . . We note that such reservations were not shared by [the defendant], who wanted the trial to continue." [Citations omitted.]).

In sum, I do not intend to suggest that the state's failure to provide, and the trial court's failure to inquire about, *every* fact that might be relevant to whether an alternative is feasible will render a mistrial order improper. Moreover, I am open to the possibility that the actual facts might have justified the conclusion that a continuance was not feasible. The record in the present case, however, does not reflect sufficient facts to have allowed the trial court to exercise sound, scrupulous discretion in rejecting the alternative of a continuance. Therefore, "[t]he court's failure to conduct an adequate investigation leaves us with a record that does not support the finding that the mistrial was manifestly necessary. In the absence of such record support, [the defendants'] valued right to have [their] trial completed by a particular tribunal is not to be foreclosed." (Internal quotation marks omitted.) *United States* v. *Lara-Ramirez*, supra, 519 F.3d 89.

Accordingly, I respectfully dissent.