[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 25, 2004
THOMAS K. KAHN
CLERK

_____

No. 02-15469

_____

D. C. Docket No. 01-00975-CR-SH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MIGUEL BERROA,
ARIASMENDY PILIER,
FELIX ESTEBAN THOMAS,

Defendants-Appellants.

_____

No. 02-16114

_____

D. C. Docket No. 01-00975-CR-SH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FELIX ESTEBAN THOMAS,

Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of Florida

**(June 25, 2004)**

Before WILSON and COX, Circuit Judges, and GEORGE[*], District Judge.

GEORGE, District Judge:

During deliberations following an eight day criminal trial, the jury sent two notes to the district court indicating it had decided some counts but could not agree on others. In response to the first note, the district court gave a modified *Allen* charge. Following the second note, the district court convened the parties, received the jury's verdict acquitting the defendants of the decided counts and declared a mistrial on the undecided counts. The district court, however, failed to give the parties an opportunity to comment, object, or suggest alternatives prior to declaring a mistrial, as required by Rule 26.3 of the Federal Rules of Criminal Procedure.

In this appeal, the defendants contend that the district court's violation of Rule 26.3 and the lack of manifest necessity to warrant a mistrial bars the re-trial

_____

[*]Honorable Lloyd D. George, United States District Judge for the District of Nevada, sitting by designation.

of the undecided counts. Although the Rule 26.3 violation creates a strong suggestion that the district court did not exercise sound discretion, we find that the entirety of the circumstances establish that the trial judge did not abuse his discretion in finding manifest necessity for the declaration of mistrial.[1]

Factual Background

A federal grand jury returned a four-count indictment charging Felix Esteban Thomas, Miguel Berroa, Ariasmendy Pilier and three other individuals with: (1) conspiracy to obstruct, delay, and affect commerce by a robbery of cocaine from individuals they believed to be engaged in narcotics trafficking by use of actual or threatened force in violation of 18 U.S.C. § 1951(a) (Hobbs Act) (Count One); (2) conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count Two); (3) conspiracy to carry four firearms during and in relation to Counts One and Two, in violation of 18 U.S.C. §§ 924(c)(1)(A) and (o) (Count Three); and (4) carrying and possessing four firearms during and in relation to Counts One and Two, in violation of 18

---

[1] The defendants also argue that Count One was a lesser included offense of Counts Two through Four, and that their acquittals bar re-trial. Without further discussion, we find that the re-trial of defendants on Count 1 is not barred by their acquittals on the other counts.

U.S.C. §§ 924(c)(1)(A) and (2) (Count Four).[2] The indictment stemmed from an

alleged plan to commit an armed home-invasion robbery to take the cocaine and

money.

Thomas, Berroa and Pilier were tried before a jury from May 20, 2002,

through May 28, 2002. After several requests and questions from the jury during

deliberations on May 28 and 29, the jury wrote a note to the court stating, "We

have agreed on some counts. However, we are unable to come to a decision on

others." After consulting counsel for all parties, the court gave the jury a modified

*Allen* charge.[3] The jury continued its deliberations on May 29 and 30, including

sending another question to the court. After lunch on May 30, the jury notified the

court, "We again have made some decisions. However we can not [sic] come to

an agreement on others." In response, the district judge convened court and

received the jury's verdict on the counts that were decided. The jury acquitted

Thomas on Count Four and was unable to reach a verdict on Counts One, Two and

Three. The jury acquitted Berroa and Pilier on Counts Two, Three and Four, but

could not reach a verdict on Count One. The court then excused the jury and

---

[2]     The indictment returned five charges but these defendants were not charged in
Count Five.

[3]     *See* U.S. Eleventh Circuit District Judges Ass'n Pattern Jury Instructions
(Criminal Cases), Trial Instructions n.6 (West 1997).

4

declared a mistrial as to each undecided count.  In so doing, the court did not first provide any party an opportunity to comment on or object to the propriety of a mistrial, or to suggest alternatives as required by Rule 26.3.

Following this declaration of mistrial and the dismissal of the jury, counsel for Berroa both objected to the mistrial and requested pretrial release for his client. The district court, apparently responding to the request for release, indicated that it would "not consider that at this time," and that counsel would have to address it one month later because he was "flying out of this district tomorrow without question."  The court further indicated that it would instruct staff "to file such request or any other matter . . . to the magistrate for a report and recommendation, because I can rule on those matters even though I am not here."

Berroa and Pilier filed joint motions, adopted by Thomas, (1) for judgment of acquittal; (2) to dismiss Count One of the indictment pursuant to the Double Jeopardy Clause; and (3) to dismiss or bar prosecution based on double jeopardy and collateral or direct estoppel grounds.  The defendants argued, as they do on appeal, that double jeopardy barred retrial because: (1) the district court failed to comply with Federal Rule of Criminal Procedure 26.3; (2) the declaration of mistrial was not supported by manifest necessity; and (3) Count One was a lesser included offense of Counts Two through Four and is thus barred based upon

5

principles of collateral or direct estoppel.  The district court denied the defendants'

motion for judgment of acquittal and, in an October 3, 2002 order, the district

court denied the defendants' motions to dismiss Count One, as well as their

motion to dismiss or bar prosecution.  In its discussion, the court focused on

"manifest necessity" as a precursor to declaring a mistrial.  Finding the jury

genuinely deadlocked, the court concluded that double jeopardy did not bar retrial

on Count One because manifest necessity required a declaration of a mistrial.  In

response to the district court's order, the defendants filed timely notices of

interlocutory appeal.

## Discussion

We review an order of mistrial to determine whether it was manifestly

necessary, taking into consideration all circumstances.  *United States v. Perez*, 22

U.S. (9 Wheat.) 579, 580 (1824).  The deference we accord to the trial judge's

finding of manifest necessity varies according to the circumstances, which

circumstances include the basis for the order of mistrial and the trial judge's

exercise of sound discretion in making the decision.  *Arizona v. Washington*, 434

U.S. 508, 509-510, fn. 28 (1978).

In our consideration of this matter, we must address a question of first impression before we can decide the propriety of the order of mistrial. Specifically, we must determine the impact of the district court's violation of Rule 26.3 in connection with the order of mistrial. Rule 26.3 provides: "Before ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives." Fed. R. Crim. P. 26.3. Without dispute, the trial judge did not comply with the mandate of Rule 26.3 prior to discharging the jury and declaring the mistrial.

While no circuit has specifically addressed the consequences of a Rule 26.3 violation, we have the benefit of significant guidance on this issue. Since Rule 26.3 "is not designed to change the substantive law governing mistrials," *see* FED. R. CRIM. P. 26.3 advisory committee's note, we appropriately begin by looking to that substantive law. In determining, and reviewing, whether a mistrial is properly granted, courts have long followed Justice Story's classic formulation:

> [T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the

7

greatest caution, under urgent circumstance, and for very plain and obvious causes. . . .

*Perez*, at 580. More recently, the Supreme Court reiterated that "[t]his formulation, consistently adhered to by this Court in subsequent decisions, abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial." *Illinois v. Somerville,* 410 U.S. 458, 461 (1973). The broad spectrum of reasons for which a mistrial can be properly granted requires, and is accorded, an equally broad spectrum of levels of scrutiny when reviewing a determination of manifest necessity. As recognized in *Washington*, at one extreme, deserving the "strictest scrutiny," is the mistrial declared because of the "unavailability of critical prosecution evidence." 434 U.S. at 507-508.

At the opposite extreme, which extreme we face in this matter, "is the mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict, long considered the classic basis for a proper mistrial." *Id*., at 509. When such mistrials are declared, the trial judge's decision is generally accorded great deference. *Id.,* at 510. Justice Stevens explained the compelling reasons justifying this deference:

On the one hand, if [the trial judge] discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of

8

his "valued right to have his trial completed by a particular tribunal." But if he fails to discharge a jury which is unable to reach a verdict after protracted and exhausting deliberations, there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors. If retrial of the defendant were barred whenever an appellate court views the "necessity" for a mistrial differently from the trial judge, there would be a danger that the latter, cognizant of the serious societal consequences of an erroneous ruling, would employ coercive means to break the apparent deadlock. Such a rule would frustrate the public interest in just judgments.

*Id.*, at 509-510.

Significantly, the deference accorded the trial judge's finding of manifest necessity can disappear, even in the classic case of a hung jury, when the trial judge has not exercised sound discretion. If the record reveals that a trial judge has acted "for reasons completely unrelated to the trial problem which purports to be the basis for the mistrial ruling, close appellate scrutiny is appropriate." *Id.,* at 510, fn. 28.

We are mindful that, because jeopardy attaches before a jury returns its verdict, any determination to declare a mistrial implicates a defendant's "valued right" to have the empaneled jury reach a verdict. Nevertheless, as Justice Black recognized in *Wade v. Hunter*, 336 U.S. 684, 689 (1949), "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just

9

judgments." In *Wade*, the Court applied the test of manifest necessity, as established in *Perez*, as the appropriate mechanism to determine when this valued right of the defendant is properly subordinated to society's interest in having a jury decide the factual question of his guilt or innocence. *Id*.

We also note that, prior to the adoption of Rule 26.3, courts had addressed the issue of a trial judge's failure to hear from the parties prior to declaring a mistrial. Most helpful are the two decisions that prompted Rule 26.3: *United States v. Dixon*, 913 F.2d 1305 (8th Cir. 1990) and *United States v. Bates*, 917 F.2d 388 (9th Cir. 1990). *See* FED. R. CRIM. P. 26.3 advisory committee's note. In *Dixon*, the Eighth Circuit noted that "consultation with counsel and consideration of available alternatives are consistent with the exercise of sound discretion," while "[a] precipitate decision, reflected by a rapid sequence of events culminating in a declaration of mistrial, would tend to indicate insufficient concern for the defendant's constitutional protection." 913 F.2d at 1311. As a result of the precipitous nature of the trial judge's decision in *Dixon*, which was evidenced by a rapid sequence of events that included (but was not limited to) the failure to hear from defense counsel, the appellate court applied close appellate scrutiny, rather than deference, to find the order of mistrial was not manifestly necessary.

In *Bates*, the appellate court noted:

The Supreme Court and appellate courts have relied on four indicators in determining whether the trial court abused its discretion. Has the trial judge (1) heard the opinions of the parties about the propriety of the mistrial, (2) considered the alternatives to a mistrial and chosen the alternative least harmful to a defendant's rights, (3) acted deliberately instead of abruptly, and (4) properly determined that the defendant would benefit from the declaration of mistrial.

917 F.2d at 396. As the Ninth Circuit observed, "trial courts are much more likely to have exercised sound discretion when they listen to the parties before declaring a mistrial and dismissing a jury." *Id.* In *Bates*, the Ninth Circuit's finding that the trial court abused its discretion was strongly suggested by the combination of the trial court's failure to hear from the parties, its failure to consider a "most important alternative," and its abrupt decision. *Id.,* at 398.

Considered collectively, these cases establish that, prior to Rule 26.3, trial courts were strongly advised by appellate courts to provide parties an opportunity to be heard before declaring a mistrial. Although the substantive law prior to Rule 26.3 advised rather than mandated that a trial judge hear from the parties, the trial judge's failure to hear the parties was one factor, among several, that appellate courts considered in determining whether the trial court exercised sound discretion. Against this context, we find that Rule 26.3 was enacted to codify rather than to change the existing law. The primary effect of Rule 26.3 reveals itself as prophylactic; Rule 26.3 recalls to trial judges the critical importance of

11

consultation with counsel. Although Rule 26.3 now mandates that which was previously strongly advised, the failure to hear from the parties has invariably been a factor to be considered when applying the manifest necessity test. Consistent with the adoption of Rule 26.3, a trial court's failure to hear from the parties remains as one of several factors to be considered in determining whether the trial court exercised sound discretion. Consistent with the manifest necessity test, the extent to which a Rule 26.3 violation indicates a lack of sound discretion must be considered and resolved based upon the individual and varying circumstances of each case. As Rule 26.3 mandates that a trial court provide the parties an opportunity to be heard, the failure to comply with that mandate necessarily creates a strong suggestion that a trial judge did not exercise sound discretion. Accordingly, we hold that a violation of Rule 26.3–the failure to give the parties an opportunity to comment, object, or suggest alternatives before declaring a mistrial–is one factor to be considered in determining whether a trial judge exercised sound discretion.

In this matter, having considered the entirety of circumstances established by the record, we find that the trial judge exercised sound discretion in ordering the mistrial. The mistrial was granted in the "classic case" of a deadlocked jury, a

12

circumstance in which great deference is generally accorded to the decision of the trial judge.

The trial judge did not hear from the parties prior to declaring a mistrial. We consider this failure significant, given the mandate of Rule 26.3, and it strongly suggests that the trial judge did not exercise sound discretion.

By contrast, the events leading to the decision to declare a mistrial were not rapid, and we cannot say that the trial judge's decision was precipitous. Without dispute, after receiving the jury's note on the afternoon of May 30 declaring that it could not agree on some counts, the district court convened counsel and the jury, took the verdict and immediately declared a mistrial as to the other counts. Significantly, before declaring the mistrial, the district court consulted neither the defense attorneys nor the government.

The events of the afternoon of May 30, however, do not stand in isolation. The jury's note on that date was the second such note from the jury. In response to the first note, sent on May 29, the court gave the jury a modified *Allen* charge. Additionally, the second note was not sent shortly after the jury began deliberations, but on the third day of deliberations and the day after receiving the modified *Allen* charge. Considered as a whole, the circumstances reveal that the court's decision was not an abrupt, precipitous response to a single note from the

jury, but was a deliberate decision made subsequent to three days of deliberations, a prior note declaring an inability to agree, and the jury's prior receipt of a modified *Allen* charge.

Subsequent to declaring the mistrial, the trial judge indicated that he was "flying out of this district tomorrow without question." The record also reveals, however, that the trial judge had already altered his travel plans to accommodate the trial. In addition, on the morning of May 30, the trial judge sent a note to the jury asking when it wished to take lunch, an action inconsistent with an effort to prematurely terminate jury deliberations. On balance, these events do not indicate that the trial judge declared a mistrial to accommodate his travel plans, but establish that the judge had changed his travel plans to accommodate the trial.

The record does not reveal whether, in response to the second note, the trial judge considered alternatives to declaring a mistrial. As this limited record may have partly resulted from the failure to hear from the parties, its paucity reinforces the suggestion that the court did not exercise sound discretion. The record, however, is not entirely barren as to the issue of alternatives. As noted above, the court had already given the jury a modified *Allen* charge. Under such circumstances, a trial judge's decision to not give a second *Allen* charge cannot be faulted. The only remaining alternative, to merely allow the jury to continue to

14

deliberate, necessarily increased the "significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all jurors." Avoiding such improper verdicts is a fundamental underpinning of the great deference we accord to a trial judge's finding that the jury is deadlocked and to the order of mistrial.

On balance, we find that the district court erred in failing to consult with the parties prior to declaring a mistrial after receiving the second note from the jury stating its inability to reach a decision. While this error weighs in favor of a finding that the trial judge did not exercise sound discretion, the remainder of the record is to the contrary. Accordingly, we find that the trial judge exercised sound discretion and defer to his finding of manifest necessity to declare a mistrial.

**AFFIRMED.**