[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 11, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13447
Non-Argument Calendar

_____

D. C. Docket No. 06-20257-CR-SH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY FELTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 11, 2008)**

Before DUBINA, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Anthony Felton appeals the district court's order denying his motion to

dismiss the indictment under the Double Jeopardy Clause of the Fifth Amendment. Felton claims that the district court erred in denying the motion to dismiss for two reasons. First, Felton argues that there was no manifest necessity to declare a mistrial and thus, the district court should have given the jury an *Allen*[1] charge to continue deliberations. Second, he asserts that the district court failed to provide counsel an opportunity to comment, object, or suggest alternatives before declaring the mistrial, pursuant to Federal Rule of Criminal Procedure 26.3.

The government concedes that the district court erred in finding that manifest necessity justified its order of a mistrial. It agrees that the jury's note did not demonstrate that the jury was deadlocked and that the district court failed to establish a record of the state of the jury's deliberations. The government also concedes that the district court neither read the *Allen* charge nor followed the proscriptions of Rule 26.3 before declaring a mistrial. After careful review of the record and the parties' briefs, we find that the district court erred in denying Felton's motion to dismiss the indictment on double jeopardy grounds. Accordingly, we reverse.

## I. BACKGROUND

---

[1] *Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896) (finding no error in the trial court's instructions, given during deliberations, that the jury fulfill its sworn duty to conscientiously decide the case and work towards a unanimous verdict).

A federal grand jury indicted Felton for being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), after officers apprehended him in connection with a reported burglary and allegedly discovered a Commando Mark 45 semi-automatic rifle and ammunition in his possession. Felton entered a plea of not guilty, and the trial began on December 6, 2006. The jury began its deliberations at 4:17 p.m. on Friday, December 8, 2006.

During its deliberations, the jury submitted a note to the court asking, "May we consider constructive posses[sion] even though the prosecution's testim[ony] claims that the defendant had actual possession?" Brief for United States at App. A. The district court replied, "It is not sufficient to find that the Defendant was in the vicinity of the gun in order to satisfy constructive possession. In order to find constructive posse[ssion,] you must still find that the Defendant knowingly and intentionally possessed the gun, exerting control over it." *Id.* The jury submitted a second note stating, "We have not come to a unanimous decision. What should we do?" *Id.* At this point, the court summoned counsel from both sides, and the following discussion ensued:

THE COURT: Let me hear from counsel. You've seen the question.

[GOVERNMENT]: I think the appropriate course would be to send the jury home and have them come back on Monday to resume deliberations or to

3

give them alternatively, the option to continue to deliberate. But I believe probably most everyone in the room would prefer that they come back on Monday.

[DEFENSE]: It sounded like from the first question, Judge, that they were pretty close, so I don't know. I would like to see them finish up if they think they can in a short period of time, but if not – if they are close. If not, Monday.

THE COURT: Well, my problem is that I will not be available Monday. . . . As a matter of fact, I have surgery scheduled for Monday morning.

[DEFENSE]: Then let's give them some more time, Judge, if they want it. Because they said they haven't reached a decision. What should we do? I mean, do they need more time?

R3 at 3–4. The court and counsel then briefly discussed the defendant's bond status. At approximately 7:00 p.m., the court asked to see counsel in chambers.

At 7:08 p.m., the court assembled the jury and stated:

I received the jury's message. You have tried, in my opinion, valiantly to reach a consensus. I regret that you were unable to do so.
As I indicated to you, this means we'll have to try this case all over again. . . . Unfortunately, we require unanimous verdicts one way or the other. I don't know what your problem was, but it is painful. I'm going to excuse you from further service during this term.

R3 at 5–6. After excusing the jury, the court continued, "[a]s I said, I want the state notified. . . . Tell them they can feel free to proceed. Otherwise, I'm setting it for sometime early in – hopefully later this month. . . . I'll declare a mistrial." *Id.* at 6. Neither Felton nor the government objected to the district court's declaration of a mistrial.

4

Felton subsequently moved to dismiss the indictment and bar retrial on double jeopardy grounds, arguing that the district court erred in declaring a mistrial in the absence of manifest necessity and without first providing counsel with an opportunity to comment, object, or suggest alternatives, pursuant to Federal Rule of Criminal Procedure 26.3. The government contested Felton's motion, claiming that the second jury note indicated that the jury was deadlocked. The government further maintained that the district court provided counsel with an opportunity to object to an order of mistrial during the in-chambers discussion, and that the district court's error under Rule 26.3, if any, was harmless. In his reply brief, Felton disputed the government's factual and legal claims and submitted affidavits from two defense counsel present during the in-chambers meeting, denying any discussion of mistrial.[2] The district court summarily denied Felton's motion to dismiss without discussion. This appeal ensued, and the district court stayed further proceedings pending the outcome of this appeal.

_____

[2] There is no transcript of the chambers discussion. In its Response to Defendant's Motion to Dismiss the Indictment under the Double Jeopardy Clause, the Government claimed that "[a]fter conferring with counsel, the Court indicated in chambers its intent to declare a mistrial." Docket Entry ("DE") 47 at 2. The defendant disputes this and submitted two affidavits from defense counsel who were present at the discussion, both averring that, "[t]he Court did not state at any point in chambers provide the parties with an opportunity to comment on or object to a mistrial. . . . In fact, to the best of my recollection, the word mistrial was never spoken by anyone in chambers." DE 48, Exh. 1 and 2. Defense counsel aver that they discussed with the court "various issues regarding the case, including, but not limited to, the credibility of witnesses, the jury's deliberations, and the custody status of Mr. Felton." *Id.*

## II.  JURISDICTION AND STANDARD OF REVIEW

The district court's denial of a motion to dismiss the indictment on double jeopardy grounds is an appealable final decision over which we have interlocutory jurisdiction pursuant to 28 U.S.C. § 1291.  *Abney v. United States*, 431 U.S. 651, 662, 97 S. Ct. 2034, 2042, 52 L. Ed. 2d 651 (1977); *United States v. Benefield*, 874 F.2d 1503, 1505 (11th Cir. 1989).  We review de novo the district court's denial of a motion to dismiss an indictment on double jeopardy grounds.  *United States v. Rivera*, 77 F.3d 1348, 1350 (11th Cir. 1996) (per curiam).  We review the trial court's declaration of a mistrial on the grounds of manifest necessity for abuse of discretion.  *See Arizona v. Washington*, 434 U.S. 497, 509, 98 S. Ct. 824, 832, 54 L. Ed. 2d 717 (1978).

## III.  DISCUSSION

The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from being subjected to repeated prosecutions or cumulative punishments for the same offense.  U.S. Const. amend. V.  Jeopardy attaches once the jury is empaneled and sworn.  *United States v. Chica*, 14 F.3d 1527, 1531 (11th Cir. 1994) (quotation marks omitted) (quoting *Crist v. Bretz*, 437 U.S. 28, 35, 98 S. Ct. 2156, 2161, 57 L. Ed. 2d 24 (1978)).  Once jeopardy attaches, the defendant has a constitutional right to have the case decided by that jury, except under limited

circumstances. *Id.* Nevertheless, "[t]he Fifth Amendment prohibition against double jeopardy has never been thought to mean that the court cannot conduct a second trial when the first jury is unable to reach a unanimous verdict." *United States v. Gordy*, 526 F.2d 631, 635 (5th Cir. 1976).[3] Consequently, a "'defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments.'" *United States v. Berroa*, 374 F.3d 1053, 1057 (11th Cir. 2004) (quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S. Ct. 834, 837, 93 L. Ed. 974 (1949)). It has long been established that the court has "the authority to discharge the jury from giving any verdict, whenever, in [its] opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L. Ed. 165 (1824).

The doctrine of manifest necessity "is incompatible with a mechanical application of rules and exceptions." *Gordy*, 526 F.2d at 635; *see also Washington*, 434 U.S. at 506, 98 S. Ct. at 830–31. Because manifest necessity is based on the particular circumstances facing the trial court, we accord varying

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

7

degrees of deference to the court's determination. *Berroa*, 374 F.3d at 1056–57. Nevertheless, there must be a high degree of necessity to support the conclusion that a mistrial is appropriate. *Washington*, 434 U.S. at 506, 98 S. Ct. at 831. Where, as here, the district court's finding of manifest necessity stems from the jury's genuine inability to reach a verdict, "a reviewing court must examine the circumstances surrounding the discharge to determine if the trial court exercised its limited discretion to abort the proceedings in a manner consistent with the protection of the defendant's Fifth Amendment rights." *Gordy*, 526 F.2d at 635. The trial court's determination of manifest necessity premised upon a deadlocked jury is generally accorded great deference. *Berroa*, 374 F.3d at 1057.

We consider several pertinent factors in determining whether manifest necessity exists: "the length of the trial, the complexity of the issues involved and the length of the deliberations. In addition, the trial judge's communications with the jurors are particularly significant." *Gordy*, 526 F.2d at 635–36. While "a statement from the jury that it is hopelessly deadlocked is a crucial factor, . . . a present inability to agree is not determinative of the question of whether future deliberations might prove helpful." *Id.* at 636.

Additionally, "we must determine the impact of the district court's violation of Rule 26.3 in connection with the order of mistrial." *Berroa*, 374 F.3d at 1056.

8

Rule 26.3 instructs that "[b]efore ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives." Fed. R. Crim. P. 26.3. The district court's "failure to comply with that mandate necessarily creates a strong suggestion that a trial judge did not exercise sound discretion." *Berroa*, 374 F.3d at 1058.

Here, the jury began deliberations at 4:17 p.m. on a Friday afternoon after a three day trial. The first note from the jury indicated its difficulty in applying the evidence presented to the legal elements of constructive possession. The second note, submitted shortly before 7:00 p.m., indicated that the jury had not yet reached a unanimous decision, but it did not state that it was hopelessly deadlocked. The jury had been deliberating for less than three hours before asking the court, "[w]hat should we do?" The judge did not communicate with the jury or foreperson to determine the concerns underlying its inquiry or if further deliberations might yield a verdict. Moreover, the court did not give an *Allen* charge to encourage the jury to reach a unanimous verdict. The facts do not show that the jury was genuinely deadlocked. Rather, the totality of the circumstances strongly suggest that the jury wanted to retire, rather than stay late on a Friday evening in deliberations. Counsel's discussion with the court after the jury's second note further supports

9

this conclusion.

The district court also denied the parties an opportunity to be heard before declaring a mistrial. The district court's failure to comply with Rule 26.3 further undermines its finding of manifest necessity. The record shows that the judge was eager to close the case that evening, rather than continue deliberations on Monday, because of a scheduled surgery. Yet, we have held that the "determination of manifest necessity for a mistrial depends upon the state of the jury rather than the state of the judge." *Gordy*, 526 F.2d at 632. We accord no deference to the district court's determination of manifest necessity because the record, taken as a whole, reveals that the court acted for reasons completely unrelated to the purported basis for the mistrial ruling—a genuinely deadlocked jury. *See Berroa*, 374 F.3d at 1057. For these reasons, we find that there was no manifest necessity to compel the district court's order of a mistrial.

## IV. CONCLUSION

We hold that the retrial of Felton is barred by the Double Jeopardy Clause of the Fifth Amendment. The district court abused its discretion in determining that there was manifest necessity to declare a mistrial, and therefore erred in denying Felton's motion to dismiss the indictment. Accordingly, we REVERSE the district court's July 10, 2007 order, and we REMAND for further proceedings consistent

10

with this opinion.

REVERSED AND REMANDED.