[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 5, 2010
JOHN LEY
CLERK

_____

Nos. 09-13234 & 09-13235

_____

D.C. Docket Nos. 08-00038-CR-FTM-99DNF,
08-00138-CR-FTM-99-SPC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BOBBY HENRY HOLT,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(November 5, 2010)

Before HULL, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Bobby Henry Holt ("Holt") appeals his convictions and 360-month sentence for charges arising from his alleged sexual misconduct with a minor victim ("MV"), Holt's former stepdaughter. Specifically, Holt was convicted for: (1) possession of visual depictions involving the use of a minor engaged in sexually explicit conduct; (2) production of visual depictions involving the use of a minor engaged in sexually explicit conduct; (3) possession of a firearm by a convicted felon; (4) conspiracy to tamper with a witness; and (5) tampering with a witness. After careful review of the record, counsels' briefs, and the benefit of oral argument, we affirm.

## I. BACKGROUND

The sexual relationship between Holt and his stepdaughter, MV, began when she was fourteen years old and persisted until she was seventeen. MV testified that during this time she had hundreds of sexual encounters with Holt, often trading sex for drugs, to which she was addicted. Holt also took sexually explicit photographs of MV, sometimes with MV engaged in sexual acts with other people. When MV was seventeen, her mother and Holt divorced, and sometime afterward, MV reported Holt's activities to her mother and to law enforcement.

On February 9, 2008, MV's mother contacted the Lee County Sheriff's Office and stated that her below-age daughter had been the victim of sexual abuse by Holt. A few days later, on February 14, 2008, Lee County Sheriff's Office Detective

2

Francesca Kraft met with MV and her mother and they explained the sexual abuse. Detective Kraft made an audio recording of this meeting. Based on this information, Detective Kraft swore an affidavit to set forth probable cause to obtain a search warrant of Holt's residence. The affidavit stated facts supporting her belief that sufficient probable cause existed to believe Holt had violated Florida Statutes § 794.05, which prohibits unlawful sexual activity with certain minors, and that evidence of the crime could be found in Holt's residence in Labelle, Hendry County, Florida.

According to the affidavit, MV's mother stated as follows: She married Holt in 2005 and had an often-violent relationship with him. Holt threatened her frequently and physically abused her. Holt often paid special attention to her daughter, MV, and called her pet names. Though she was uncomfortable when she saw Holt and MV together, she never witnessed any inappropriate behavior between them and at the time, MV denied Holt had done anything to her. On February 9, 2008, MV called her mother and told her about Holt's sexual abuse. MV stated that she began having a sexual relationship with Holt when she was fourteen years old. Specifically, Holt began touching MV shortly after MV moved in with him and her mother in Lehigh Acres, and MV had been engaged in a sexual relationship with Holt since the summer of 2005. Holt began abusing MV by touching her vagina and then

3

escalated to digital and penile penetration. Sometimes multiple sex toys were used in their encounters. Though she knew it was wrong to have sex with Holt, she would consent in exchange for drugs and alcohol, which Holt would give to her. Holt would often take photographs of MV naked and engaged in sexual acts with others. All of the foregoing facts are contained in the affidavit.

In addition, Detective Kraft handwrote onto the affidavit that the "victim stated the pictures were placed on a computer screen and cell phone [camera]." The affidavit contained directions to Holt's residence in Hendry County, Florida and included a non-exhaustive description of the evidence believed to be inside. The magistrate judge granted the search warrant for Holt's residence on the basis of this affidavit.

Detective Kraft also took a sworn statement from MV, which corroborated the facts in the affidavit. MV stated that her drug of choice was "pot," which Holt would obtain for her; that she and Holt had sex over 1,000 times; and that she had moved out of Holt's home the Tuesday before she reported the abuse. The affidavit is ambiguous as to when MV and Holt had their last sexual encounter; it occurred either five weeks before MV moved out of his home or five weeks before MV reported the abuse.

On February 15, 2008, Lee County law enforcement agents executed the search warrant of Holt's Hendry County residence. The search yielded, among other things, a digital camera, photographs of Holt and MV, numerous sex toys, a "sex swing," firearms, ammunition, and a cell phone. Analysis of the camera and cell phone revealed they contained sexually explicit images of MV taken when she was sixteen and seventeen years old.

In March 2008, in case number 2:08-cr-00038-JES-DNF-1 ("Case No. 38"), a federal grand jury indicted Holt for: (1) possession of visual depictions involving the use of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (Count I); (2) production of visual depictions involving the use of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2251(a) and (e) (Count 2); and (3) possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 3). Several months later on September 10, 2008, another federal grand jury returned an indictment in case number 2:08:-cr-00138-JES-SPC-1 ("Case No. 138"), charging Holt and co-defendant Steven Ray Miller ("Miller") with: (1) conspiracy to tamper with a witness, in violation of 18 U.S.C. § 1512(b)(3), (k) and 371 (Count 1); and (2) tampering with a witness, in violation of 18 U.S.C. §§ 2 and 1512(b)(3) (Count 2).

On October 3, 2008, Holt filed a motion to suppress all evidence seized during

the execution of the February 2008 search warrant. After holding a hearing, in which Detective Kraft testified, the district court denied Holt's motion to suppress.

While Holt was in jail awaiting trial on the charges in Case No. 38, multiple recordings of telephone conversations between Holt and his co-conspirator Miller were taken. In these conversations, which Holt was aware could be recorded or monitored because he was in jail and had heard a pre-recorded warning, Holt repeatedly instructed Miller to seek out Jennifer Maski ("Maski"), who was pictured engaging in a sex act with MV in one of the photographs recovered from Holt's cell phone. During one of the recorded conversations, Holt asked Miller if he could contact "two girls from the beach" they had "picked up." Holt also instructed Miller to seek out the owner of the shop where Holt kept his four-wheeler, and tell him not to relinquish the four-wheeler to anyone but Holt's father, and that if anyone asked him, the only people Holt had brought to the shop were his father, his ex-wife, and his ex-wife's son and her daughter, MV. Audio recordings of these conversations were played at trial.

Miller later testified that he had contacted Maski to relay the messages from Holt, and that Miller understood the following: (1) Holt had only one picture of Maski and that it was a picture of her in the car wearing a black shirt, (2) that MV said there was a picture of MV and Maski doing a sexual act, but that there were not

6

any faces in the picture, (3) that Maski should not talk to law enforcement about the picture, and (4) that Maski should deny knowing Holt. Miller also told Maski that "[w]ithout a face there's no crime." Miller further testified that he had never "picked up" two girls at the beach with Holt, but that Miller understood Holt to mean that Miller should find two girls and claim they were the ones in the photograph. Miller also testified that, with regard to the four-wheeler, he delivered the message Holt had instructed but he did not know what it meant.

In January 2009, the district court consolidated Cases Nos. 38 and 138 for trial. The jury found Holt guilty on all counts. The presentence investigation report ("PSI") calculated Holt's base offense level at 32, pursuant to U.S.S.G. § 2G2.1(a), and recommended two-level adjustments for each of the following: U.S.S.G §§ 2G2.1(b)(1)(B) (for involvement of a minor victim who had attained the age of twelve years but not yet attained the age of sixteen years), 2G2.1(b)(2)(A) (for commission of a sexual act), 2G2.1(b)(3) (for an offense involving "distribution"), 2G2.1(b)(5) (for an offense in which the minor victim was in the defendant's custody or supervision), and U.S.S.G. § 3C1.1 for obstructing or impeding the administration of justice. This placed Holt's final offense level at 42, with a criminal history category of I. The advisory guidelines sentencing range was from 360 months to life imprisonment.

Holt objected to the two-level adjustments for involvement of a minor victim who had attained the age of twelve years but not yet attained the age of sixteen years (U.S.S.G. § 2G2.1(b)(1)(B)), and to the adjustment for "distribution" (U.S.S.G. § 2G2.1(b)(3)).[1] The district court overruled Holt's sentencing objections. In Case No. 38, the district court sentenced Holt to 120 months imprisonment on Count 1, 360 months imprisonment on Count 2, and 120 months imprisonment on Count 3, to run concurrently, plus lifetime supervised release. In Case No. 138, the court sentenced Holt to 240 months imprisonment on Count 1 and 240 months imprisonment on Count 2, to run concurrently with the 360-month sentence imposed in Case No. 38, plus 36 months supervised release to run concurrently with Case No. 38. Holt filed this timely appeal.

## III.  DISCUSSION

### A.  Motion to Suppress

Holt argues that the district court erred in denying his motion to suppress the search warrant because Detective Kraft's affidavit contained stale information and intentional misstatements.  In reviewing the denial of a motion to suppress, we construe the facts in the light most favorable to the government, reviewing the district court's factual findings for clear error and legal conclusions *de novo*, United States

---

[1]Holt did not object to the other guidelines level enhancements.

8

v. Morales, 889 F.2d 1058, 1059 (11th Cir. 1989) ("Absent a clear error we are bound by the district courts findings of fact and credibility choices at the suppression hearing.") (citations omitted). "A finding of fact is clearly erroneous only when we are left with a definite and firm conviction that a mistake has been committed." Id. We affirm the district court's denial of Holt's motion to suppress.

Holt argues that the district court should have suppressed the evidence obtained from the search of his residence because of material omissions in Detective Kraft's affidavit supporting probable cause and because the information in the affidavit was stale. In probable cause determinations, a totality of the circumstances analysis applies, and "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983). Affidavits supporting search warrants are presumptively valid. Franks v. Delaware, 438 U.S. 154, 171, 98 S. Ct. 2674, 2684 (1978). For probable cause to exist, however, the information supporting the government's application for a search warrant must be timely, and probable cause must exist at the time the magistrate judge issues the search warrant. United States v. Harris, 20 F.3d 445, 450

(11th Cir. 1994). "Warrant applications based upon stale information fail to create a probable cause that similar or improper conduct is continuing." Id. (citations omitted). There is no "talismanic rule which establishes arbitrary time limitations for presenting information to a magistrate;" rather, each case is reviewed on the unique facts presented, considering "the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." Id.

To prevail on a motion to suppress based on allegations of falsity in the supporting affidavit, the defendant bears the burden of establishing that: (1) the affiant made the alleged misrepresentations or omissions knowingly or recklessly, and (2) the alleged omissions or exclusion of the alleged misrepresentations would result in lack of probable cause. United States v. Novaton, 271 F.3d 968, 986-87 (11th Cir. 2001) "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." Id. (quoting Franks, 438 U.S. at 171, 98 S. Ct. at 2684.) The allegations "should point out specifically the position of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons." Id. (quoting Franks, 438 U.S. at 171, 98 S. Ct. at 2684).

Upon review of Detective Kraft's affidavit and her testimony at the hearing on

Holt's motion to suppress, we find no clear error in the district court's factual findings. Furthermore, the facts Holt claims were erroneously omitted from Detective Kraft's affidavit were either immaterial, unknown to Detective Kraft, or omitted unintentionally. Detective Kraft's affidavit adequately disclosed that MV and Holt had been engaged in a sexual relationship for several years, that MV was fourteen when the sexual encounters began, that Holt took photographs of MV engaged in sexual acts, and that sometimes these photographs depicted MV engaged in sexual acts with others. Although Kraft's affidavit did not expressly state that the acts occurred in Holt's Hendry County residence, it was reasonable for the magistrate judge to find probable cause that evidence of Holt's sexual misconduct with MV, including his digital camera, cell phone, and sex toys, would be found there.[2]

We likewise agree with the district court that the information in the affidavit was not stale. Holt's sexual exploitation of his stepdaughter was ongoing, rather than a discrete occurrence, and Holt routinely kept photographs, both digital copies and hard copies, in his Hendry County residence long after the photographs were taken. Upon consideration of the unique facts in this case, which we must take into account,

---

[2]Because we find no clear error by the district court and no probable cause defect in Detective Kraft's affidavit we need not address the good faith exception articulated in United States v Leon, 468 U.S. 897, 104 S. Ct. 2405 (1984).

we conclude that the information in the affidavit was not stale. See Harris, 20 F.3d at 450.

**B.**     **Motion for Judgment of Acquittal**

Holt argues that the district court erred in denying his motion for judgment of acquittal on the witness tampering charge. A district court's denial of a motion for judgment of acquittal is subject to *de novo* review, applying the same standard used in reviewing sufficiency of the evidence. United States v. Descent, 292 F.3d 703, 706 (11th Cir. 2002). In reviewing sufficiency, we view the evidence in the light most favorable to the government and make all reasonable inferences and credibility findings in the government's favor. United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004). To uphold the denial of a motion for judgment of acquittal, we need only determine that a reasonable fact finder could conclude that the evidence established defendant's guilt beyond a reasonable doubt. Descent, 292 F.3d at 706. However, if a defendant moves for judgment of acquittal at the close of the government's case and fails to renew the motion at the end of all the evidence, he has waived "the issue of sufficiency of the evidence on appeal absent a showing of a manifest miscarriage of justice." United States v. Jones, 32 F.3d 1512, 1516 (11th Cir. 1994) (quotation omitted).

The witness tampering offense of which Holt was convicted provides:

> (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to
>
> . . .
>
> (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense
>
> . . .
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(b), (b)(3). Section 1512(k) further provides that "[w]hoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." Id. § 1512(k).

Although Holt moved for judgment of acquittal at the close of the government's case, he failed to renew the motion at the close of all the evidence. Therefore, Holt has waived this issue on appeal unless we find a manifest miscarriage of justice would result. Jones, 32 F.3d at 1516. A review of the record shows that no manifest miscarriage of justice would result from upholding the district court's denial of Holt's motion for judgment of acquittal. The evidence was sufficient to establish that Holt violated § 1512(k) by conspiring to persuade Miller, potential witness

13

Maski, and the owner of the shop where Holt kept his four-wheeler, to relay false information to law enforcement officials, in violation of § 1512(b)(3). A jury could reasonably infer that Holt's telephone calls to Miller were actually attempts to have Miller tamper with Maski. The jury could also infer that Holt's requests for Miller to contact Maski were Holt's way of asking Miller to tell Maski she should not talk to law enforcement, and should deny being in the photo with MV. A reasonable jury could infer that Holt's reference to the two girls he and Miller "picked up" at the beach, was Holt's way of telling Miller to find two women who would say they were in the photograph. The evidence was also sufficient to establish that Holt violated 18 U.S.C. § 1512(b)(3) and 18 U.S.C. § 2 by inducing Miller to tamper with Maski and the shop owner. Miller testified that after saying he had a message from Holt, he specifically told Maski that she should lie to law enforcement, and that he also relayed Holt's message to the shop owner. Because the evidence was sufficient to support a finding that Holt conspired to tamper with a witness and aided and abetted in tampering with a witness, a manifest miscarriage of justice would not result from upholding Holt's conviction.[3]

---

[3]Holt also appears to challenge the legal sufficiency of his indictment on the witness tampering conspiracy count. We review the legal sufficiency of an indictment *de novo*. United States v. Jordan, 582 F.3d 1239, 1245 (11th Cir. 2009). Generally, a defendant must object before trial to defects in an indictment, and failure to do so waives any alleged defects. United States v. Seher, 562 F.3d 1344, 1359 (11th Cir. 2009). "The only exception to this waiver rule is for claims that the indictment 'fails to invoke the court's jurisdiction or to state an offense' which

## C.    Motion for Mistrial

Holt argues that the district court erred by denying his motion for mistrial based upon the admission of inadmissible character evidence and other bad acts. We review a district court's evidentiary rulings for an abuse of discretion, and we will not reverse unless an error had a substantial influence on the outcome of the trial. United States v. Gunn, 369 F.3d 1229, 1236 (11th Cir. 2004). We review a district court's denial of a motion for mistrial for an abuse of discretion. United States v. Abraham, 386 F.3d 1033, 1036 (11th Cir. 2004). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed R. Evid. 403. "Rule 403 is an extraordinary remedy that must be used sparingly because it results in the exclusion of concededly probative evidence." United States v. U.S. Infrastructure, Inc., 576 F.3d 1195, 1211 (11th Cir. 2009). Rule 404(a) provides that "[e]vidence of a

---

may be made at any time during the proceedings." Id. (quoting Fed. R. Crim. P. 12(b)(3)(B)). To the extent Holt challenges the sufficiency of the indictment, he has waived that argument because he never argued, either to the district court or on appeal, that the indictment failed to invoke the court's jurisdiction or state an offense. See Seher, 562 F.3d at 1359.

15

person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Fed. R. Evid. 404(a). Rule 404(b) provides that evidence of other crimes and bad acts "is not admissible to prove the character of a person in order to show action in conformity therewith," though it may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. . . ." Fed R. Evid. 404(b).

We must first decide "whether the evidence in question is actually extrinsic evidence and therefore subject to 404(b) analysis." United States v. Schlei, 122 F.3d 944, 990 (11th Cir. 1997) (citation and quotations omitted).

> This Circuit has long held that evidence of criminal activity other than the crime charged is not extrinsic under Rule 404(b) if the evidence is inextricably intertwined with evidence of the charged offense . . . Rule 404(b) does not apply when the other act evidence is linked in time and circumstances with the charged crime and concerns the context, motive or setup of the crime; or forms an integral part of the crime; or is necessary to complete the story of the crime.

U.S. Infrastructure, Inc., 576 F.3d at 1210 (citation omitted).

Holt argues that the district court disregarded its own order not to admit evidence with respect to MV's past sexual relationship with Holt or anyone else when it allowed a government witness to testify that Holt had told the witness he "banged"

the two girls featured in the photograph on his cell phone, one of which was MV. Holt argues that this evidence was not relevant, confused the jury, was highly prejudicial, and that it was character evidence of wrongful acts to prove the defendant's actions were in conformity therewith.[4] We disagree.

Although the district court indicated that it did not want to get into the Holt's or MV's sexual history, it did not abuse its discretion in overruling Holt's objection to the testimony. The district court correctly ruled that Rule 404(b) does not apply because the evidence is not extrinsic, as it is linked in time and circumstance to the charged crimes of possession and production of child pornography. Furthermore, it also concerns the context, motive, and setup of the alleged crime. Id. The evidence is highly relevant because Holt's sexual relationship with MV is central to this case, identifies MV's physical presence in the photograph, and makes it more likely that Holt took pornographic images of MV. Moreover, its probative value is not

---

[4]In addition, Holt argues that the district court did not give the parties an opportunity to comment on the propriety of the order denying his motion for mistrial as directed by Fed. R. Crim. P. 26.3. Rule 26.3 provides that, "[b]efore ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives." While Holt is correct that Rule 26.3 requires the court provide an "opportunity for each side to comment on the propriety of the [mistrial] order," this opportunity to be heard is only required when the district court is about to order a mistrial, which was not the case here. See United States v. Berroa, 374 F.3d 1053 (11th Cir. 2004) (holding that trial judge erred by not providing parties opportunity to be heard prior to declaring a mistrial). Because there was no mistrial in the instant case, Holt's reliance on Rule 26.3 is misplaced.

substantially outweighed by the danger of prejudice, confusion of the issues, or misleading the jury as there is no indication in the record that the jury was confused or misled and the evidence is highly probative of the charges in this case. See Fed. R. Evid. 401, 403. The district court, therefore, did not abuse its discretion in admitting the challenged evidence and in denying Holt's motion for mistrial.

### D. Sentencing Issues

At sentencing, the district court imposed a two-level enhancement because Holt's offenses involved a minor victim who had attained the age of twelve but had not yet attained the age of sixteen, and another two-level enhancement because Holt "distributed" the photographs of MV by showing them to another person using his cell phone. Holt challenges these two enhancements and the substantive reasonableness of his 360-month concurrent sentences.

We review the district court's application and interpretation of the federal Sentencing Guidelines *de novo* and its factual findings for clear error. United States v. Smith, 480 F.3d 1277, 1278 (11th Cir. 2007). The government must establish by a preponderance of the evidence the facts necessary to support a sentencing enhancement. Id. at 1280-81.

#### 1. Sentencing Enhancement for Age of Victim

Sentencing Guidelines § 2G2.1(b)(1)(B) provides for a two-level enhancement

for defendants convicted of sexually exploiting a minor by production of sexually explicit visual or printed material when "the offense involved a minor who had . . . attained the age of twelve years but not attained the age of sixteen years." U.S.S.G. § 2G2.1(b)(1). The guidelines define a defendant's "offense" as the "offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." U.S.S.G. § 1B1.1, cmt. n. 1(H). "Relevant conduct" includes "(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and...(B) in the case of a jointly undertaken criminal activity . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1). We interpret relevant conduct broadly. United States v. Behr, 93 F.3d 765, 765 (11th Cir. 1996).

Holt contends that the two-level enhancement under U.S.S.G § 2G2.1(b)(1)(B) for MV's age is unwarranted, because although the PSI found the sexual abuse occurred when MV was fourteen years old, MV was sixteen and seventeen years old during the time period for the relevant offense of conviction for production of child

19

pornography. Holt further asserts that the court interpreted the meaning of the word "offense" too broadly within § 2G2.1(b)(1)(B) and in so doing, disregarded the literal meaning of the indictment and the guideline.

The district court's factual finding that Holt's sexual abuse of MV began when she was fourteen years old is relevant conduct and is not clearly erroneous. As MV testified, she and Holt were engaged in a continuous sexual relationship while she was between the ages of fourteen and seventeen. The PSI noted that some of the images of MV were taken when she was fifteen years old. Given this, and interpreting the guidelines broadly, it is entirely plausible that Holt's inappropriate sexual relationship with MV groomed her to participate in Holt's production of pornographic images. See Behr, 93 F.3d at 765. The district court did not clearly err when it found that Holt's repeated sexual abuse of the victim, commencing when she was fourteen years old, was relevant conduct. Therefore, we affirm the § 2G2.1(b)(1)(B) enhancement.

### 2. Sentencing Enhancement for Distribution

Holt argues that the district court erred in applying an enhancement for "distribution" because his conduct did not constitute "distribution" as defined in the commentary to U.S.S.G. § 2G2.1(b)(3). Holt contends that the court interpreted "distribution" too broadly, and that his actions do not qualify for the § 2G2.1(b)(3)

two-level enhancement.

Section 2G2.1(b)(3) provides for a two-level increase to the offense level if the "offense involved distribution." Although this Court has not defined what constitutes "distribution" under § 2G2.1(b)(3), we are not without guidance. The commentary to § 2G2.1 (b)(3), cited by Holt, provides as follows:

> 'Distribution' means any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant.

§ 2G2.1, cmt. n.1.

We have, moreover, considered the meaning of "distribution" elsewhere in the guidelines. In United States v. Probel, 214 F.3d 1285 (11th Cir. 2000), this Court considered a prior version of U.S.S.G. § 2G2.2(b)(2) and held that distribution included an uncompensated transmission of pictures via the internet. Id. Furthermore, our sister circuit held in United States v. Hecht, 470 F.3d 177 (4th Cir. 2006), that pointing a web camera at pornographic images on a computer screen and transmitting the images over the internet constituted "distribution" of child pornography under § 2G2.2(b)(2)(2003) (amended 2004), which provides an identical definition of

21

"distribution" to § 2G2.1(b)(3). Compare Hecht, 40 F.3d at 182-83; with U.S.S.G. § 2G2.2, cmt. n. 1. Hecht interpreted "distribution" broadly, noting that: "Whether the images are sent over the internet attached to an e-mail or sent over the internet via a web camera, the sender has engaged in an act 'related to the transfer' of the images." Id. at 183.

Holt argues that merely showing pornographic images on his cell phone to a third party and never relinquishing control or possession of his cell phone does not constitute "distribution". We disagree. We find that Holt's actions fall within the definition of "distribution" under this guideline. Holt's publication of the pornographic images to a third party using his cell phone was "related to the transfer of material involving the sexual exploitation of a minor." As noted in Hecht, "distribution" is defined broadly and can involve various methods of transfer, including, we believe, Holt's act of displaying the content to a third party via his cell phone camera. The commentary language defines "distribution" as somewhere along the spectrum between posting material on a website (which is distribution) and mere solicitation of the material by defendant (which is not distribution). U.S.S.G. § 2G2.2 cmt. n.1. Here, Holt's actions constituted more than mere solicitation of the material. Holt solicited the material, stored it within his possession in an electronic medium, and then showed the images to a third party. Under these facts, we hold that Holt's

22

actions crossed the threshold of mere solicitation and constituted distribution. Thus,

the district court did not err in applying a two-level enhancement for distribution.

### 3. Reasonableness of Holt's 360-Month Sentence[5]

We review the final sentence imposed by a district court for reasonableness.

United States v. Booker, 543 U.S. 220, 264, 125 S.Ct. 738, 767 (2005). First, we

must ensure that the district court committed no significant procedural error, such as

incorrectly calculating the guidelines or failing to consider the § 3553(a) factors.[6]

United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008); Gall v. United States,

552 U.S. 38, 49-50, 128 S.Ct. 586, 597 (2007). A district court is not required to state

on the record that it has explicitly considered each of the § 3553(a) factors or to

discuss each factor. Talley, 431 F.3d at 786. Rather, "[t]he sentencing judge should

set forth enough to satisfy the appellate court that he has considered the parties'

arguments and has a reasoned basis for exercising his own legal decision making

---

[5]It appears from the briefs that Holt is only challenging the 360 month sentence as to Count 2 in Case No. 38.

[6]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005) (summarizing 18 U.S.C. § 3553(a)).

authority." United States v. Rita, 551 U.S. 338, 356, 127 S.Ct. 2456, 2468 (2007).

Nonetheless, when a judge decides simply to apply the Guidelines to a particular case, as in the instant case,

> doing so will not necessarily require lengthy explanation. Circumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case, and that the judge has found that the case before him is typical.

Id.

Once we determine that the district court's sentencing decision is procedurally sound, we then review the substantive reasonableness of the sentence for abuse of discretion. Id. at 359. Reasonableness review is "deferential," and the burden is on the appellant to show that the sentence was unreasonable in light of the record and the § 3553(a) factors. Talley, 431 F.3d at 788. While a sentence within the guidelines range is not *per se* reasonable, we ordinarily expect such a sentence to be reasonable. Id. The fact that both the sentencing judge and the Sentencing Commission have reached the same conclusion as to the proper sentence "significantly increases the likelihood that the sentence is a reasonable one." Rita, 551 U.S. at 347, 127 S.Ct. at 2463.

"The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court[,] and we will not substitute our judgment in weighing the relevant factors." United States v. Amedeo, 487 F.3d 823, 832 (11th Cir. 2007) (quotation marks omitted). We will remand for resentencing only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." Pugh, 515 F.3d at 1191  (quotation marks omitted).

Holt argues that his sentence was unreasonable because the district court failed to properly calculate the guidelines and to consider the § 3553(a) factors. Furthermore, Holt asserts his 360-month sentence is greater than necessary to achieve the purposes of sentencing and that there is no indicia of rehabilitation built into his sentence, arguing the only purpose of the 360 month sentence is punishment.

As stated above, the district court did not procedurally err in enhancing Holt's sentence under § 2G2.1(b)(1)(B) and § 2G2.1(b)(3) of the guidelines.  Holt's next claim that the court did not consider the various § 3553(a) factors is also without merit.  The record is replete with instances where the district court considered the respective parties' arguments regarding the § 3553(a) factors, even explicitly stating

25

that it had done so. This satisfies the procedural standard required of the district court. Therefore, we find no error.

We also find that Holt's sentence is substantively reasonable. Even though the court considered all of the § 3553(a) factors, it is not required to rely solely on them. The district court was well within its discretion in giving more weight to the guidelines range and the seriousness of Holt's disturbing relevant conduct with respect to MV, which included repeated acts of sexual abuse of a stepdaughter beginning when she was only fourteen years old. In light of this, the district court's imposition of a 360-month sentence is not outside the range of reasonable sentences. See Pugh, 515 F.3d at 1191; see also United States v. Sarras, 575 F.3d 1191, 1220 (11th Cir. 2009) ("Child sex crimes are among the most egregious and despicable of societal and criminal offenses, and courts have upheld lengthy sentences in these cases as substantively reasonable."); United States v. Kapordelis, 569 F.3d 1291, 1303, 1316-19 (11th Cir. 2009) (upholding as reasonable a 420-month sentence, which represented an upward variance from the 262-327-month guideline range, for possession, production, and receipt of child pornography).

For the foregoing reasons, we affirm Holt's convictions and sentences.

**AFFIRMED.**